## Town of LaGrange v. Overstreet.

(Decided December 6, 1910.)

### Appeal from Oldham Circuit Court.

1. Municipal Corporations—Powers of Boards of Trustees.—Under section 3704 of the Kentucky Statutes giving boards of trustees the right to pass ordinances not in conflict with the Constitution and laws of the State, and to do and perform all other acts necessary to carry out the powers conferred by the statute, and to control the streets and remove obstructions therefrom, they have a wide discretion in the enactment of ordinances controlling and regulating the affairs of the town as well as the condition of the streets.

2. Boards of Trustees—Powers.—Extensive as is the authority of boards of trustees, there is the limitation and restraint upon its exercise that it must not be used in an unreasonable, arbitrary, capricious or oppressive manner, or to gratify malice or ill will. If it is, the court will protect the citizen or class of citizens affected by this unauthorized assumption of power.

3. Same.—But the court will not interfere with the acts of municipal authorities in the performance of their public duties, unless it plainly appears that they are acting in an arbitrary, unreasonable or oppressive manner, or are influenced by improper motives, ill will or caprice. And in every case where there is doubt, it will be resolved in favor of the action of the authorities and the presumption be indulged that they have acted prudently, wisely and for the benefit of the municipality and its people.

4. Powers of Boards of Trustees—Discretion.—The conditions in towns are so different that no rule of general application can

well be laid down by which to measure the discretion lodged in municipal boards. And so the rule is that the decision of each case involving the exercise of discretion upon the part of the board must largely rest upon the facts it presents.

5.  Streets and Sidewalks.—These public places are under the especial care of the board of trustees, and they should be allowed the largest reasonable discretion, not only in constructing, improving and maintaining them in a suitable condition for public travel, but in removing from them any objects or obstructions that are unsightly or objectionable or that interfere with the full enjoyment of them by the public. And this discretion is not confined to keeping them in safe condition for public travel, —it extends as fully to keeping them clean and attractive in appearance.

6.  Rights of Abutting Property Owners.—The rights of abutting property owners to the use of the street is subject to the control of the municipal authorities, and to their judgment the wishes of the abutting property owners must generally yield.

7.  Shade Trees.—Suitable and attractive shade trees add a great deal to the beauty and comfort of towns, and when they are so located as to leave room for convenient travel, the boards of trustees should not order their removal unless there is good reason for so doing.

8.  Shade Trees.—In this case the board of trustees ordered the removal from the sidewalk of a large and unsightly locust tree that furnished little shade. It appeared that it was the only locust tree in the square where it stood, and that the people of the town had been gradually cutting down locust trees and setting out more suitable and attractive trees in their place. Held, that the board of trustees had the right to order the removal of the tree, not only because it was an obstruction of the street, but on account of its unsightly appearance and its unfitness as a shade tree.

JAMES S. MORRIS and CHARLES H. MORRIS for appellant.

A. T. LADD for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In 1909, the board of trustees of LaGrange, then a town of the sixth class, enacted an ordinance providing for the reconstruction of a sidewalk in front of the property owned by appellee Overstreet, and the removal of a locust tree owned by him that was standing in the sidewalk ordered to be reconstructed, the real purpose of the ordinance being to secure the removal of the tree. Thereupon appellee brought this action to enjoin the board of trustees from enforcing the ordinance upon the

ground that the direction to remove the tree was an unreasonable and arbitrary exercise of power by the municipal authorities, and that the ordinance was invalid because the title was defective. The lower court granted the relief sought, and the board of trustees appeals.

We may say at the outset that the averment in the petition that the ordinance is invalid for defects in the title is not pressed or even mentioned by the counsel for appellee as a reason for declaring that it should not be enforced, and so we do not think it necessary to further allude to this feature of the case. Especially so as an inspection of the record satisfies us that there is no defect in the title of the ordinance.

The question then before us is, the right of the board of trustees to order the tree to be cut down and removed. The tree is located on the main street of the town, and the sidewalk where it stands is used more than any other in the town. At the place where the tree is located the concrete sidewalk is eight feet wide and the tree is about two feet and four inches in diameter. It stands on the line of the sidewalk and curbing, two feet of it being on the sidewalk and four inches projecting over the sidewalk into the gutter. It is about thirty years old, and several years ago the top and one-half of the body was killed by a fire in adjacent property, but the remaining half of the tree is alive, and we may assume from the evidence that it will live for many years. After the fire, the top was cut off, but a number of the branches put out, and in the summer time it furnishes for a part of each day some shade to the hotel property. There are in the record photographs of the tree, taken in the winter time, but they clearly show that it is an unsightly and unattractive tree, and not capable of furnishing much shade. Fronting on the sidewalk where the tree is located is a hotel owned by the appellee, and there is some evidence that this tree is valuable and useful to the hotel on account of the shade it affords. On this street and in the square in which this tree stands, there are many other shade trees, but none of them except the one in controversy are locust, and it is shown that for a number of years the citizens of the town have been gradually and voluntarily cutting down the locust trees and planting in place of them other trees that furnish better shade and are more attractive in appearance.

In brief, the evidence for the trustees is to the effect that this locust tree is unsightly, deformed and unattractive, as well as an exception to the variety of trees that have been set out on the street and square for shade and ornamental purposes, and that it furnishes little shade and is an unreasonable obstruction of the sidewalk. While the evidence for the appellee conduces to show that the tree furnishes good shade, is not bad looking, nor an unreasonable obstruction.

Section 3704 of the Kentucky Statutes, which is a part of the charter of sixth class towns, provides in part that the board of trustees of such towns shall have the power to "pass ordinances not in conflict with the Constitution or laws of this Commonwealth or of the United States" and to "do and perform any and all other acts and things necessary or proper to carry out the provisions of this chapter, and to enact and enforce within the limits of such town all other local, police, sanitary and other regulations as do not conflict with general laws." Section 3706 gives authority "* * *" to order any work they deem necessary to be done upon the sidewalks, curbing, sewers, streets, avenues, highways and public places of the town." * * * And section 3709 confers power "* * * to cause to be removed any obstructions in the streets of the town." * * *

It was under the authority conferred by these statutory provisions that the ordinance directing the reconstruction of the sidewalk and the removal of the tree was enacted. It will be observed that the statute vests large powers in the board of trustees, giving them wide discretion in the enactment of ordinances controlling and regulating the affairs of the town as well as the condition and improvement of its sidewalks, streets and highways. But, extensive as this authority is, there is the limitation and restraint upon its exercise imposed by well established principles of law that it must not be used in an unreasonable, arbitrary, capricious or oppressive manner, or to gratify malice or ill-will. If it is, the court will protect the citizen or class of citizens affected by this unauthorized assumption of power, and prevent by its process the municipal boards from acting without the scope of their authority, or within the scope but in violation of the principle noted. But as the State has created these political subdivisions, and delegated to them a part of its sovereign power, to be exercised in the govermental affairs

of the people composing the municipality, and has given the inhabitants the right to select from among their number, citizens to administer their municipal and public affairs, it needs no argument to show that the acts of these representatives of the municipality in the performance of their public functions should not be controlled or interferred with unless it plainly appears that they are acting in an arbitrary, unreasonable or oppressive manner or are influenced in their official conduct by improper motives, ill-will or caprice. And it is not to be lightly asserted that they have exceeded their authority or in other respects have acted in such a manner as to justify the courts in interposing to protect the citizen from oppression or injustice, whatever form it may take. In every case where there is doubt, it should be resolved in favor of the action of the authorities and the presumption be indulged that they have acted prudently, wisely and for the benefit of the municipality and its people. It is not probable or indeed possible that municipal boards in the conduct of the affairs of a municipality can please everybody or dispense equal or exact justice to all. It may and often does happen that ordinances enacted will operate harshly and unequally upon certain individuals and interests, imposing in some instances greater burdens upon some persons than upon others, and giving to others advantages and conveniences that are not enjoyed by all. This inequality of benefits and burdens finds frequent illustration in the imposition of license fees and taxes, in the number and location of street lights, water supplies, street improvements, police and fire protection, and other municipal aids intended for the safety, comfort and convenience of the people of the town, and is a necessary and unavoidable incident of all forms of government, whether State, national or municipal. And especially does the complicated and diversified nature of municipal affairs make it impracticable to devise any scheme of government that will be entirely free from the appearance or in fact the reality of favoritism on the one hand and discrimination upon the other. And it is largely in deference to these practical conditions that complaining individuals or classes must clearly show, before the courts will interfere that there has been an abuse of power. In this connection it would not be out of the way to say that among the duties imposed upon boards of trustees and city councils, excepting the question of taxation alone, there are none that so intimately

concern the people or that give rise to so much dissatisfaction, criticism and litigation as those which affect the streets, sidewalks and other public ways of the town or city. These public places are under the especial care of the board of trustees, and they are and should be allowed the largest reasonable discretion, not only in constructing, improving and maintaining them in a suitable and proper condition for public travel, but in removing from them any objects or obstructions that are unsightly or objectionable, or that interfere with their full enjoyment by the public. One reason for allowing a wide latitude in respect to the control of these public places grows out of the fact that the law requires municipalities to keep the streets, sidewalks and public ways in a reasonably safe condition for public travel, and this means the whole of the way that has been dedicated or set apart for public use and not a part of it. We may further say that the authority conferred and broad discretion allowed in caring for and supervising the condition of the streets and other public places is not confined to keeping them in safe condition for travel, it extends as fully to keeping them clean and attractive in appearance. Of course, how wide streets or pavements shall be, or whether they shall be constructed out of one kind of material or another, or what kind of obstructions or obstacles may be placed in them in the way of trees, or telegraph or telephone poles, or supports for balconies, or other objects, or what regulations shall be made for keeping them clean and attractive, presents ever-varying questions that the municipal authorities must deal with as they come up, and as the situation seems to demand. What would be a reasonable obstruction in one place or on one street might be an unreasonable one on another. What would be regarded as a suitable sidewalk in one part of the town might be inadequate for the needs of another. What would be an objectionable or unattractive object in one place might not be so in another. And the different conditions that exist in almost every city and town again brings into view the necessity for allowing the authorities the people have chosen to manage their affairs the largest reasonable discretion. Boards of trustees and councils must be citizens of the town. They are selected by the people, and it must be presumed that they understand the needs and wants of the municipality, and that in the performance of their duties they will be actuated by a desire to administer its affairs in such manner as

will contribute to the growth and prosperity as well as the safety, healthfulness and beauty of the place. Recognizing the force of these general suggestions, the courts have uniformly refused to interfere with the management of the municipal affairs of a city by its chosen officers, so long as they are within the limits of the power conferred by the statute, and it is not shown that in the enactment of ordinances they were influenced by malice, corruption or fraud or actuated by an unreasonable, arbitrary or capricious spirit. The facts disclosed by the record before us well illustrate how unwise and impolitic it would be for the courts to set aside acts of municipal boards in regulating the domestic affairs of the town or city under their care, and demonstrates that it would often result in setting up the opinion of one man against the opinion of another, when that other was acting in the discharge of his duty and exercising it in a way that he conceived to be legitimate and proper. Here, the board of trustees, composed of five citizens, have deliberately come to the conclusion that this locust tree was not only an unreasonable and unnecessary obstruction of the street, but an unsightly and useless object and should, therefore, be removed. On the other hand, the owner of the tree and other citizens of the town are of the opinion that the tree is not an unreasonable or unnecessary obstruction and is useful as well as ornamental and should not be removed. Looking at the question now from this standpoint, what should the court do under the circumstances? Should it accept the opinion of the board of trustees of the town, of men selected by the people for the purpose of administering its affairs, and who deliberate and act under a sense of duty, actuated only by a desire to do that which is best for the interests of the town and its people? Or, should it accept the statements of other, equally as reputable, citizens, but who are not under an official duty to the city or charged with more than individual responsibility for the proper conduct of its affairs? It seems to us that this question answers itself, and that it should accept the conclusion reached by the board of trustees in preference to the opinion expressed by the individuals, unless satisfied that their action was unreasonable and arbitrary, as it is not claimed in this case that the board of trustees was induced to take the action it did from any improper motive. We the more readily adopt this conclusion, because taking as we should for ourselves an independent view of

the matter as it comes to us in the record, we cannot say that the board of trustees in ordering this tree removed acted in an arbitrary, unreasonable or capricious manner. And so aside from the fact that it obstructs the sidewalk, we are of the opinion that the board of trustees in an effort to beautify the town and improve the appearance of the street had the authority to order its removal. But, it is said that there are telephone and telegraph poles, and numbers of shade trees in the streets, each of which is as great or nearly as great an obstruction as the tree in question, and so the argument is made that as this tree does not obstruct the street more than many other poles and trees it should not be singled out for destruction. It is true that in almost every city and town in the country there can be found telephone, telegraph and electric light poles in the streets or sidewalks, as well as numbers of shade trees; but, so far as the poles used for business purposes are concerned, in many places the municipal authorities have required that they should be removed and the wires that had been attached to them put under the ground, and in others, they have not. The conditions in many towns and cities make it necessary or at least advisable that these poles should be removed from the streets, while in other places their location on the streets is not a matter of much consequence. But the mere fact that the board of trustees permit these poles in the town of LaGrange to remain in the street is not a good reason why they should be denied the right to remove this tree from the sidewalk. And here again the question of discretion lodged in municipal boards comes into notice. In the exercise of this discretion they are not required to remove every obstruction or obstacle, but only those that it seems to them ought to be removed either for the purpose of making the town more attractive or the streets safer or more commodious or other good reason. But, we may add that shade trees are not to be dealt with in the same manner as poles or similar objects. Shade trees add a great deal to the beauty and comfort of towns and cities. The inhabitants are encouraged to set them out, care for and protect them, and in nearly every town ordinances have been enacted looking to their safety. And so we doubt if the board of trustees in any town in the state would be so indifferent to or reckless of the wishes and civic spirit of the community as to order the removal of suitable and attractive shade trees from streets or sidewalks, if they were so located

as to leave room for convenient travel, unless there was other good reason for taking such action. It is, however, a matter of such common observation that we may take judicial notice of the fact that locust trees do not make desirable or attractive shade trees. It is now seldom that they are set out or permitted to remain in yards or other places where shade trees are desirable. Many years ago, and before the qualities of maple and other species of shade trees that are now seen in yards, lawns and other places in this section of the country were known or their qualities as shade trees fully understood or appreciated, locust trees were much more common in such places than they are now. This changed condition in keeping with the spirit of modern and progressive improvement is illustrated by the conditions existing in Lagrange, where, as the record shows, the people have been gradually cutting down locust trees and setting out in place of them more ornamental and better shade trees. So that the question of the power of the board of trustees to order an attractive and suitable shade tree that was so situated as to leave enough of the street for convenient travel, is not presented by this record. If it was, probably a different conclusion might be reached, as the abutting property owner, whether he owns a fee in the sidewalk or not, has rights therein that he may enjoy in a manner not inconsistent with the use by the public. But, it should be kept in mind that the right of the abutting property owner to the use of the street is subject to the control of the municipal authorities, and to their judgment the wishes of the abutting owner must generally yield. Dillon on Municipal Corporations, 4th Edition, Vol. 2, Secs. 730-4; 28 Cyc., pages 850, 864.

We have not treated as important the testimony in regard to the value of the tree to the adjacent property of appellee, as it does not seem to us that the value of the tree under the circumstances of this case should be allowed to affect the question of the right of the board of trustees to order its removal. Of course, there might be a case in which the value of the thing ordered to be removed or destroyed in connection with the circumstances under which it was allowed to be or remain where it was until the order of removal was made, would be a proper subject for consideration in determining whether or not the board of trustees acted in an unreasonable, oppressive or arbitrary manner, but the value

of this tree for shade or other purposes is not sufficient to make this question material in the disposition of this case.

The views we have expressed are fully supported by the cases of Boyd v. Board of Councilmen of the City of Frankfort, 117 Ky., 199; Hall v. Commonwealth, 101 Ky., 383; City of Georgetown v. Hambrick, 127 Ky., 43; Chase v. City of Oshkosh, 81 Wis. 313; 15 L. R. A., 553; Tate v. City of Greensboro, 114 N. C., 392; 24 L. R. A., 671; Mt. Carmel v. Shaw, 27 L. R. A., 580; Hawes v. Chicago, 158 Ill., 653; 30 L. R. A., 225; Rosenthal v. City of Goldsboro, 149 N. C. 128; 16 Annot. Cases, 639; Yick Wo v. Hopkins, 118 U. S., 356; 30 L. Ed., 220; Wilson v. Sunmons, 89 Maine, 242; City of Atlanta v. Holiday, 96 Ga., 546; Vanderhunt v. Tholcke, 113 Cal., 147; as well as by Dillon on Municipal Corporations and other text writers on the subject.

But counsel for appellee insists that the judgment of the lower court is sustained by the opinion of this court in Pickrell v. City of Carlisle, 135 Ky. 126. If so, it is necessarily in conflict with what we have said. Although the Pickrell case presented the question of the right of the board of trustees to remove obstructions from the street, the facts as stated in the opinion are so radically different from the facts of this case that it could not well be controlling authority for the decision reached by the lower court. In cases like this, where it is difficult if not entirely impracticable to lay down any general principle that will fit all of them, the courts have uniformly ruled that the decision of each case must largely rest upon the facts it presents. But, for the purpose of making it plain that there is no disagreement between the conclusion reached in the Pickrell case and this, we will state briefly the facts of that case that induced the court to hold that the action of the board of trustees was unreasonable and arbitrary. Pickrell in building a dwelling house on the line of the street began to build steps out in the street to enable him to get into the house, when the council ordered him to remove them. The court said:

"All the buildings on that block fronting Locust street are built on the line of the street, several of them being residences. The most of them have steps and porches extending a foot or so, to three or four feet, out on the pavement. The pavement along that block is 12 feet wide, and constructed of cement.   *   *   *   In addition to the foregoing, the proof discloses the following

facts: Many other buildings in the town on Main street and other streets have steps extending out on the pavements. On this lot where plaintiff erected his house there formerly stood an old stone building used as a store for many years. It had stood there longer than the memory of the oldest inhabitant. It was built on the property line also. There was a stone step 18 inches wide, 6 or 8 inches high, and 5 feet long in front of it and extending for its full length and width on the pavement. Just south of that step there was a cellar door in the pavement next to the building. It was a double wooden door, slanting from the pavement to the building, being some 2½ feet higher at the building than at the pavement. On its south side it was much higher above the surface of the pavement than at its north side. The door extended out onto the pavement four feet, and its width when open was eight feet. The steps now in question occupy part of the space formerly taken up by that cellar door, and partly by the old steps above referrel to."

Upon these facts, the court concluded the opinion in this way:

"The facts that others in the same block, and in other blocks, where the pavements were not so wide, were suffered and had been for a great many years, to maintain similar partial obstruction, is evidence that such steps were not unreasonable, but were a common custom in that town. What is common is generally known by all, and would seem not to be an unreasonable course. The town might have prohibited such steps by a general ordinance of uniform application. As it has not done so, unless it shows that the particular obstruction complained of is in fact a nuisance, and is an unreasonable use of the public way under the conditions shown to exist there, appellant sought not to be singled out for discipline merely to vindicate a previously unused power."

After a careful review of the evidence, looking at it from the standpoint most favorable to appellee, we are of the opinion that the board of trustees acted reasonably, in good faith, and without any purpose to harrass, and so we conclude that the judgment must be reversed, with directions to dissolve the injunction and dismiss the petition.