## Henderson, Oil Inspector v. Lane, et al.

(Decided March 28, 1924.)

### Appeal from Ballard Circuit Court.

1. Injunction—Officers—Equity will Interfere to Protect Incumbent of Office by Enjoining Removal or Ordering Reinstatement.— Though as a general rule courts of equity do not try title to an office, there are instances where they will interfere to protect incumbent in enjoyment of his office by enjoining his removal or ordering his reinstatement after he has been unlawfully removed.

2. Officers—Requisites of Proceedings for Removal Stated.—Where an officer holds for a fixed term and is removable only for cause,

it is essential to a valid removal that the charges be legally sufficient, that the incumbent have notice thereof and an opportunity to defend, and that there be some evidence tending to support the charges.

3. Inspection—Oil Inspector Not Negligent in Permitting Another to Get Sample of Oil.—A female oil inspector was not guilty of negligence warranting her removal because she permitted an oil company's agent to climb a tank and remove a seal and get a sample of oil instead of doing it herself, the whole thing being done in her presence.

4. Evidence—By Evidence is Meant Something of Substance or Consequence, and Not Vague, Uncertain, or Irrelevant Matter.—By evidence is meant something of substance and relevant consequence, and not vague, uncertain or irrelevant matter not carrying the quality of proof or having fitness to induce conviction.

5. Inspection—Evidence Held Not to Show Misconduct of Oil Inspector.—In a proceeding to remove an oil inspector, evidence concerning an inspection of oil held not sufficient to show misconduct or incompetency, under Ky. Stats., sections 2205, 2206.

JOHN E. KANE, M. C. ANDERSON and WILLIAM HENDERSON and W. F. WHITE for appellant.

F. B. MARTIN, HENRY F. TURNER and HOLIFIELD, GARDNER & McDONALD for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Oil inspectors are appointed by the judges of the county court for a term of four years, unless removed by the court for misconduct, negligence or incompetency. Section 2204, Kentucky Statutes.

On December 3, 1921, Judge William Henderson, the county judge of Ballard county, appointed his wife, Mrs. Mollie Henderson, to a vacancy in the office of oil inspector. Her term would not have expired until April 6, 1925. At the regular election held in the month of November, 1921, Ben V. Morris was elected judge of the Ballard county court. He qualified on the first Monday in January, 1922. A few months later he cited Mrs. Henderson to appear and answer charges of negligence and incompetency. Mrs. Henderson appeared by attorney and denied the charges. At the conclusion of the evidence Judge Morris adjudged her guilty of negligence and incompetency, and entered an order removing her from office. A few days later he appointed his brother-in-law, A. W. Lane, to fill the vacancy. Mrs. Henderson appealed to the circuit court, where the case was dismissed for want of jurisdiction. On appeal to this court

the judgment of the circuit court was affirmed. Henderson v. Commonwealth, 199 Ky. 798, 251 S. W. 988.

Charging that Judge Morris acted corruptly and arbitrarily in removing her from office and appointing A. W. Lane to the vacancy, and that said orders were void, Mrs. Henderson brought this suit to enjoin Judge Morris from appointing, or attempting to appoint, anyone as oil inspector during her term of office, and to enjoin Lane from discharging, or attempting to discharge, the duties of the office, or from interfering with her in the discharge of the duties of the office. The general demurrer which the defendants interposed to the petition as amended was sustained, and the petition dismissed. From that judgment this appeal is prosecuted.

After setting forth her appointment and qualification as oil inspector, and election and qualification of Judge Morris, the allegations of the petition as amended are in substance as follows: At no time was appellant guilty of any misconduct, negligence or incompetency in the discharge of the duties of the office. From the time of his qualification Judge Morris desired to remove appellant from office and to appoint an oil inspector of his own choosing. He made constant inquiries of different parties with respect to the manner in which appellant discharged her duties and conversed with all the witnesses who testified against her, and was fully informed of what their testimony would be. He procured his brother-in-law and co-appellee, A. W. Lane, and Wes Johnson to verify the affidavit upon which to institute the proceeding for her removal, and personally prepared the affidavit. He had his mind fully made up before the time of the trial with respect to the character of judgment that he was to enter against appellant, without regard to what the proof upon the hearing might be. He was disqualified to sit and try the case, and appellant filed her affidavit setting forth facts showing his disqualification. He overruled a motion to vacate the bench, and arbitrarily and corruptly continued to preside in the proceeding, and to hear and determine the case. He had himself sworn and testified as a witness upon the trial. Upon the trial there was no proof introduced or heard showing any misconduct, negligence or incompetency in the discharge of her duties, nor any proof in respect to which fair-minded men could be said to reasonably differ as to whether she was or was not guilty of misconduct,

negligence or incompetency.  Notwithstanding there was no such proof, Judge Morris arbitrarily and corruptly entered a judgment removing her from office, and no appeal lies from that judgment.  Filed with the petition, and made a part thereof, is a correct copy of all the evidence heard at the trial.

Though, as a general rule, courts of equity do not try title to an office, there are instances where they will interfere to protect an incumbent in the enjoyment of his office by enjoining his unlawful removal, or ordering his reinstatement after he has been unlawfully removed. Where, as here, an officer holds for a fixed term, and is removable only for cause, it is essential to a valid removal that the charges be legally sufficient, that the incumbent have notice thereof and an opportunity to defend, and that there be some evidence tending to support the charges.   Reese v. Hickman County, 187 Ky. 641, 220 S. W. 314; Stanley v. Fiscal Court of Hopkins County, 190 Ky. 495, 227 S. W. 813; Todd, Mayor v. Dunlap, et al., 99 Ky. 449, 36 S. W. 541; Page v. Hardin, 8 B. Mon. 648. In this case it is conceded that the charges were sufficient, and that Mrs. Henderson had notice thereof and an opportunity to be heard, so the only question to be determined is whether there was some evidence to support the charges.

A. W. Lane testified that he went to LaCenter just to see some oil tested.  While he was at the tank Mrs. Henderson drove up in a car.  Mrs. Henderson was forty or fifty yards from the tank.  Dan Brown, the agent for the Standard Oil Company, got up on top of the tank, broke the seal and filled a bottle with oil.  He afterwards delivered the bottle to Mrs. Henderson, who went to Brown's residence and tested the oil.  The bottle could have been switched.  Witness then went up to Mr. Brown's house and saw Mrs. Henderson test the oil.  His description of the test was as follows:

"Q.  How did she test it?  A.  She put it in the tester there and poured out her alcohol and lit it and put her thermometer in and let it heat for some little bit.

Q.  Do you know how long?  A.  No, sir; I judge fifteen or twenty minutes or half an hour or more.

Q.  That she let that burn?  A.  I never timed her.  I suppose something like that.

Q. Do you know whether she was keeping time as to how long that was burning or not? A. Not that I know of. I didn't notice any timepiece."

On cross-examination his testimony was as follows:

"Q. You have never tested any oil yourself? A. No, sir.

Q. You don't now undertake to tell the court whether or not that oil was tested correctly? A. No, sir.

Q. You don't even know what it did test? A. No, sir.

Q. Wouldn't know good oil if you saw it tested? A. I don't know that I would unless more familiar. . . ."

Again he testified as follows:

"Q. You are acquainted with where Dan Brown lives were you not? A. Yes, sir, I know where he lives.

Q. Which room did Mrs. Henderson test this oil? A. In the room on the southeast corner of the house, I think, on the left as you go in.

Q. Did you go in the room with her? A. I was in there when she came in.

Q. Did you stay there until she got the alcohol lamp burning. A. Yes.

Q. You say she let it burn a half hour? A. I say it was fifteen or twenty minutes, something like that. Thirty minutes possibly. I never timed her. I don't know how long.

Q. She was timing it? A. Not that I know of, she might have been.

Q. She used a thermometer there? A. Yes, sir.

Q. She used a little lamp to set under the container that had the oil in it? A. Yes, sir.

Q. She permitted that to burn? A. She set in the chair and talked to Mrs. Brown.

Q. When she let it burn quite a length of time what did she do towards seeing if it stood the test? A. She looked at the thermometer and taken it out and put the tester in her grip.

Q. She did look at the thermometer? A. Yes, sir.

Q. Did she strike a match? Yes, sir.

Q. Did the match ignite the oil? A. I couldn't say. She was between me and the oil.

Q. You don't know whether she lit it? A. She struck the match all right.

Q. What part of the room were you in? A. I was sitting over right across from where she was.

Q. Across how? West, north or east? A. I was sitting right over here and she was right there.

Q. How far from her? A. It is about six or eight or ten feet from the table.

COURT: The court wants a little information itself. You say you saw Mrs. Henderson apply the fire test to this oil by lighting an alcohol lamp and placing it under it? A. Yes, sir.

COURT: If I understood you right you said she sat down and talked to Mrs. Brown? A. Yes, sir.

COURT: Did she test that oil at each degree it was heated by that light? A. She set there and talked some little bit and got up and struck a match and stuck it to the oil. I couldn't see but she struck off a match.

COURT: Did she do that once or twice or several times? A. She done that once, I think. Maybe twice. I think but once.

Q. If she did it twice, the first time she touched the match to it, it didn't ignite? A. I don't suppose so. I don't think she done that but once.

Q. If you were so interested in seeing how oil was tested, please tell the court why it is you went off and sat down on the other side of the room and didn't observe her close enough to tell whether she touched it once or twice or at what degree it exploded or anything at all except go over there and sit down while she was testing? A. I was sitting where I could see all I wanted to see. Of course I couldn't tell anything about whether it was correct or not.

Q. What did you want to see? A. I wanted to see what I have been telling you all the time.''

Wes Johnson, who accompanied A. W. Lane, merely testified to the fact that Dan Brown got the oil out of the tank for Mrs. Henderson, and that Mrs. Henderson never left her car. Dan Brown testified that on the occasion in question he drew the oil out of the tank for Mrs. Henderson and delivered the bottle to her. He had seen her test coal oil and she did it according to law.

Joe Reno testified that he was in the taxicab business and carried Mrs. Henderson to LaCenter to inspect oil on three occasions. The first time it was coal oil, and it was drawn out of the tank and Mrs. Henderson took it to the house. The next time it was gasoline, and they poured it on the ground and struck a match to it. Dan Brown was the man who drew the oil out. The one who drew the oil came through the little shed. He supposed that the bottle could have been switched.

The manner of testing oil and the temperature at which oil may be approved are prescribed by sections 2205 and 2206, Kentucky Statutes, which are as follows:

"Section 2205. An inspector in the performance of his duties shall use the standard instruments in use for that purpose, and shall test all oils as follows:

"1. The water cup shall have sufficient water in it to rise two-thirds up the side of the oil cup.

"2. Fill the oil cup with oil to be tested to within one-eighth of an inch of the top.

"3. Suspend the thermometer so the bulb is just under the surface of the oil.

"4. Use an alcohol lamp to heat the water bath, and before placing the light under the water cup, test the oil in the oil cup by bringing a lighted match in contact with the surface of the oil. If it does not ignite, place the lamp under the water cup, and slowly heat the oil, not slower than one degree of the thermometer in a minute, nor faster than two degrees of the thermometer in a minute, moving a lighted match across the surface of the oil at each degree the thermometer rises, not more than three-eighths of an inch from the surface of the oil. If the oil should flash, that is, a little gas burn on the surface and go out again, remove the lamp, and as soon as the thermometer ceases to rise, test the oil; and should it not ignite, replace the lamp, and test the oil each degree the thermometer rises till the oil ignites or permanently burns. As soon as the oil ignites or permanently burns, the degree indicated by the thermometer is the fire test of the oil. The flame moved across the surface of the oil should not exceed that of an ordinary match."

"Section 2206. All oils and fluids specified in section 2202 that ignite or permanently burn at a

temperature of 130 degrees Fahrenheit and upward, shall be approved by the inspector; and the barrels, casks or packages containing the same shall be branded or marked by him with his name, official character and the words 'approved fire test,' and all oils or fluid aforesaid that ignite or permanently burn at a less temperature than 130 degrees Fahrenheit shall be condemned by the inspector, and the barrels, casks or packages containing the same shall be branded or marked by him with his name, official character and the words 'unsafe for illuminating purposes.' "

It is insisted that the evidence tended to show that Mrs. Henderson was not only negligent in permitting a Standard Oil agent to procure for her a sample of the oil to be tested, but was also negligent in failing to comply with the statutory method of testing the oil. Though two of the witnesses claim that it was possible for the agent of the Standard Oil Company to have switched the bottle containing the sample of the oil, the evidence shows that, as a matter of fact, the whole transaction occurred within a few yards of where Mrs. Henderson was sitting, and that there was no attempt whatever to switch the bottle. On the contrary, the identical bottle furnished for the purpose of obtaining a sample of the oil was returned to Mrs. Henderson. As Mrs. Henderson was a woman, and it was necessary to climb up on the tank and remove the seal in order to get a sample of the oil, it cannot be said that she was guilty of negligence in permitting this service to be performed by another in her presence.

In support of the claim that the test did not conform to the statute, the argument is as follows: An alcohol lamp was placed under the testing outfit and a thermometer was placed in the oil. The lamp was permitted to burn from fifteen to thirty minutes. The law requires the inspector to pass a lighted match three-eighths of an inch from the oil each time the thermometer shows an increased degree of heat. Though during the time the lamp was burning the temperature must have increased several degrees, Mrs. Henderson passed a lighted match over the oil only twice. Looking at Lane's evidence as a whole, it shows that he was several feet from the table on which the oil was being tested, and that Mrs. Henderson was between him and the lamp. He was unable to say whether the match was lighted once or twice, or

whether the oil burned when it was lighted.   He did not know at any time the degree of temperature indicated by the thermometer, nor was he able to say whether or not she tested the oil at each degree.   By evidence is meant something of substance and relevant consequence, and not vague, uncertain or irrelevant matter not carrying the quality of proof, or having fitness to induce conviction.   Clark .v. Young's Exor., 146 Ky. 377, 142 S. W. 1032; Jones v. Beckley, 173 Ky. 841, 191 S. W. 627; Gay v. Gay, 183 Ky. 245, 209 S. W. 11.   Under this rule, what Lane said could not be regarded as evidence tending to show negligence or incompetency.   Not only is his evidence vague and uncertain, but all that he said may be true and yet the test have been properly made.   Whether the oil was approved or rejected does not appear.   As a matter of fact, the same lighted match may have been drawn across the oil .several times, and this may have been sufficient.   It follows that there was no evidence to support the charge, and that the order of removal was invalid.

Judgment reversed and cause remanded with directions to grant appellant the relief prayed for.

Whole court sitting.