## City of Middlesboro et al. v. Byrd et al.

(Decided Feb. 10, 1933.)

MARTIN T. KELLY and CHAS. E. HERD for appellants.

ARTHUR W. RHORER, E. P. NCHOLSON, Jr., and N. R. PATTERSON for appellees.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

Middlesboro is a city of the third class, operating under the commission form of government.

On April 26, 1932, the city commissioners passed a resolution, reducing the regular police of the city of Middlesboro, then consisting of four officers, to the number of two, and therein directed its commissioner of public safety to designate the two of its four officers who would be dropped from the force pursuant to this resolution, which was to become effective June 1st following.

This was done by the commissioner, resulting in the dismissal from the force of appellees, Cloyd Byrd and Willard Davis.

These policemen thus removed from their positions filed a suit in the Bell circuit court, wherein, after averring that Middlesboro was a city of the third class, operating under the commission form of government, and reciting that the city, acting through its board of commissioners, had passed this resolution reducing its police force to the number of two, and that, in carrying the same into effect, they had been dropped from their positions, they complain that the act of the commissioners was, in so removing them, not one done in good faith, but was capricious and arbitrary and actuated by the motive of giving their positions to their political adherents and friends; that spite and prejudice were the guiding factors in their dismissal; that the commissioners have accomplished this, their unlawful object, through the guise or subterfuge of appointing special policemen; that, though the resolution reducing the force had declared its object to be one of economy, and its passage prompted by lack of revenue with which to pay the salaries of the then full police force, such purpose was not the true one or the real motive of the commissioners, nor has the proposed economic plan of policing the city pursued by them after the passage of the cost-saving resolution resulted in any saving to the city during the months in which tried, of June, July, and August, through which the same was in operation, but had rather resulted in increased cost to the city for its police protection over and above the amount it had cost when it employed only the four regular policemen.

Plaintiffs filed the resolution passed by the city as

an Exhibit A with their petition, and which is as follows:

"Whereas: the financial condition of the city is such it is now unable to pay its current obligations and it is within the knowledge of the Board of Commissioners that other debts against the city will from time to time mature which will increase its obligations beyond its ability to pay, and Whereas, the Police Department revenue to the city has become so reduced it has become necessary to pay for the maintenance of this department from other sources of revenue which the city is not longer able to provide, and

"Whereas the law provides that the Board of Commissioners may decrease the number of its policemen or firemen as it may from time to time deem.

"Now therefore, be it resolved that it is the judgment of the Commissioners that the Police Force should be and hereby is reduced to the number of two policemen and that after such reduction is made the force remaining shall consist of a Chief of Police and one patrolman, and the Commissioner of Public Safety is hereby directed to dismiss from the force such number of policemen now on service effective May 1st, 1932, in excess as herein set forth, and he will report to the Board at its next regular meeting his action, and he will furthermore promulgate such order pertaining to his department as may seem to him proper for the time of service of the policemen as will secure protection to the public, compatible with the provisions hereof."

The petition alleged further that they had by such methods been unlawfully and arbitrarily discharged from the police force by the commissioners, and sought an injunction requiring the commissioners to reinstate them upon the city's police force, with all the rights and emoluments belonging to their positions as such policemen, and that they be adjudged to recover their back salaries owing them for the three months of June, July, and August, 1932, during which, it is alleged, they were wrongfully discharged and removed from their positions.

Defendants filed demurrer to the petition, also a motion to dismiss the suit for want of jurisdiction, and an answer traversing the averments of the petition.

The cause being finally submitted upon its merits, upon the pleadings and proof heard, the learned chancellor adjudged that the plaintiffs had been wrongfully removed by the defendant city and board of commissioners, and directed that the commissioners reconvene and reinstate the plaintiffs to their positions as regular policemen of the city, with all the rights and emoluments belonging to such office, which they would hold until their removal should be effected as prescribed by the statute laws of the state of Kentucky.

Complaining of this judgment as erroneous, and seeking its reversal, the city of Middlesboro and board of commissioners prosecute this appeal.

The questions here presented are: (1) the right of the board of commissioners to pass this resolution resulting in appellees' dismissal as patrolmen, while serving under civil service regulations; (2) whether their dismissal constituted a discharge of them as patrolmen without cause shown, upon hearing, therefor; and (3) whether or not the complained of act of the commissioners was unreasonable, capricious, and arbitrary, entitling the plaintiffs to the injunctive relief of reinstating them to the positions from which they had been removed.

The evidence shows that, after the stated reduction of the regular police force from four members to two members, becoming effective June 1, 1932, the city appointed, on different occasions, a number of special patrolmen; also that T. G. Roberts, who was appointed a special collector in January, 1932, continued to serve at his regular monthly salary of $90 as special collector, with added police duties; also that ''Doc.'' Chadwell, appointed in the prior January as a deputy jailer at $75 a month, continued to serve the city both as such officer and also as a special policeman, without extra charge by reason of his added duties; that is, their service to the city as special policemen, both before and after June 1, was rendered without extra pay therefor in connection with the duties of their other positions, to which they had been regularly appointed and employed prior to the discharge on June 1st of plaintiffs as patrolmen.

Also it appears that the city had for some two years paid to the Merchants' Association of Middlesboro $30 a month, with which to assist it in the employment of "special policemen"; that N. A. Johnson, who, it is alleged, was appointed by the board as a regular night policeman, as substitute for the plaintiff Byrd, was only given three days' employment as special policeman after June 1 at a cost of $9 therefor to the city; and that beyond this any service rendered as special night policeman by Johnson during these months was rendered by him under arrangement with the Merchants' Association or other employer, and paid for by such employer without cost therefor to the city.

It further appears by the evidence that the city at this time had experienced much difficulty in collecting license taxes and fines, and had appointed several special collectors, with police duty given them, to assist in the collection of the large amount of these delinquent taxes. It is also shown by the evidence that it had been the custom of the city commissioners, long prior to June 1, when as a result of the complained of resolution passed the appellees were dismissed as patrolmen, to employ extra or special policemen for special occasions, and that it had appointed several parties, including those named in plaintiff's petition, as special policemen during the summer of 1932 upon different occasions of conventions held in the city or for other occasions and other events deemed to call for extra police protection.

The appellees, plaintiffs below, contend that, as the cost to the city of the reduced police force, plus the extra employees serving as special police or special collectors doing police work, was more, they claim, in its total amount for the months of June, July, and August, than what would have been the salary cost to the city for its four regular policemen, therefore such alleged result proved that the board of commissioners had not acted in good faith in reducing the regular police force for the alleged purpose of economy.

On the other hand, the appellants contend that the change in its police department effected by the resolution complained of did in fact result in a saving to the city and also in securing increased tax revenues through the agency of the special collectors, appointed with added police duties, but that independently of such

outcome of this their experiment in trying to practice economy in administering the city's police department, even had their plan failed in realizing a reduction in its cost, such result would not be sufficient to constitute their action, looking to this end and reasonably undertaken in good faith, one to be characterized and held as arbitrary and capricious.

By section 3351a-2 of the Kentucky Statutes, relating to the control and government of the police and fire departments by the council or commissioners of cities of the third class, it is expressly provided:

"Members of the police and fire departments otherwise qualified under this law shall hold their positions during good behavior, provided, however, that the provisions of this act shall not prevent the board from decreasing the number of firemen and policemen as the said board may from time to time deem proper."

Also, by section 3297, relating to the matter of appointing special patrolmen by the mayor of third class cities, it is further in part provided:

"He shall, in case of emergency, have the power to appoint special policemen in addition to the regular force, but not for a longer period at one time than three days, unless specially authorized by the council, and such special policemen shall be paid at the same rate per day paid regular policemen, and have same power and authority."

From these quoted statutory charter provisions, of third class cities, it is clear that the appellant city was thereby given ample and express authority both to decrease the number of its regular policemen and also to appoint special policemen in addition to its regular force (for which also see Barker v. Com., 209 Ky. 817, 273 S. W. 503), and by the evidence it is shown that it has, in the case complained of, exercised its express authority given it both in reducing its police force from four to the number of two, and in also additionally employing at other times and occasions special policemen.

The action of the board of commissioners in thus, by resolution, reducing its police force, being a matter which it was expressly authorized to do, did not, we con-

clude, in itself constitute the alleged wrongful act of unlawfully discharging the plaintiffs from their civil service positions as patrolmen without cause, or without first granting them a hearing upon charges preferred, which they were expressly prohibited from doing.

Plaintiffs, however, treating the loss of their positions as patrolmen, though following from the passing of the complained of resolution, as constituting the prohibited act of discharging them from office without cause, rely for reinstatement upon the authority of the cases of City of Middlesboro ex rel. Minton v. Gibson, 225 Ky. 120, 7 S. W. (2d) 825, 826; Stanley v. Fiscal Court, Hopkins County, 190 Ky. 495, 227 S. W. 813, 814; Reese v. Hickman County, 187 Ky. 641, 220 S. W. 314. But a reference to these cited cases will show that the facts in those cases were where the incumbents in office alleged they were being wrongfully or arbitrarily removed therefrom without adequate or substantial proof of cause shown upon hearing for their removal and equity asked to prevent or correct their illegal ouster.

In the first named of these cases, the newly elected commissioners passed a resolution removing from office Robt. B. Gibson, who had been elected to the position of chief of police, and by it appointed in his stead Chas. Minton. Minton thereupon instituted his action seeking an injunction to restrain Gibson from attempting to exercise any of the duties of the office of chief of police and requiring him to surrender the office. Here it was held that the injunction was correctly refused, the court saying:

"It was the purpose of the act that policemen and firemen in cities of the third class should be placed under a merit system and should not be removed except for cause."

In the Stanley Case supra, involving the removal of an officer appointed for a fixed term for cause, alleged by the officer to be inadequately established by the evidence, the court said:

"It is the rule in this and other jurisdictions that where an officer has been appointed for a fixed term, subject to removal for cause, the sufficiency of the cause is a question of law for the courts,

and where the cause alleged is legally insufficient, the courts will take the necessary steps to prevent the removal of such officer or to set aside the removal and restore him to office. Reese v. Hickman County, 187 Ky. 641, 220 S. W. 314; State v. Duluth, 53 Minn. 238, 55 N. W. 118, 39 Am. St. Rep. 595.''

The facts of the cited cases make them clearly distinguishable from the case here presented, where the board of commissioners, by their resolution, only undertook to decrease in number the police force, but where it is not by sufficient evidence shown to have by subterfuge or arbitrarily appointed successors to the positions of these officers removed as the effect of the resolution, as was done in the Middlesboro Case, supra.

Appellees contend, however, that the complained of action of the commissioners, while not expressly discharging them from office and therein appointing others to their positions, yet, through their resolution, which was adopted by them as a subterfuge only for removing them from office and for the purpose of filling their positions with their adherents, by their repeated appointment of them as special policemen or tax collectors secured the same result.

However, the board of commissioners having here only exercised an authority expressly given it to decrease the city's police force, we doubt our authority upon the evidence before us to declare its action void and unenforceable, even where resulting in dismissing the plaintiffs therefrom, upon the ground that it has in so doing made an unreasonable, arbitrary, or capricious exercise of this power so given it.

In Chesapeake & O. Ry. Co. v. City of Maysville, 69 S. W. 728, 729, 24 Ky. Law Rep. 615, we said:

''The only point relied on is that the ordinance is, under the facts of the case, an unreasonable and oppressive exercise of the police power, and for this reason unenforceable. The ordinance complained of was passed pursuant to express legislative authority, and, as was said in Hall v. Com., 101 Ky. 385, 41 S. W. 2 (19 Ky. Law Rep. 578): 'It is a well-settled rule that an ordinance cannot be assailed as invalid merely because it may be con-

sidered as unreasonable, or as working a hardship in particular cases. In other words, what the legislature expressly authorized cannot be set aside by the courts because they deem it unreasonable.' In the case of Com. v. Fowler, 96 Ky. 179; 28 S. W. 789 (16 Ky. Law Rep. 360), 33 L. R. A. 839, in sustaining the validity of a statute passed in the exercise of a police power, this court said: 'We cannot hold this or any law invalid for the reason simply that it violates our opinion of justice, or is oppressive, or, in our opinion, is not required or authorized by public necessity. The remedy for unwise or unjust legislation is not to be provided by the judiciary.' "

And further, in Masonic W. & O. Home v. City of Corbin, 229 Ky. 375, 17 S. W. (2d) 215, 217, we said: "An act of a city council concerning the administration of the business affairs of a municipality ought to be sustained by the courts, unless it clearly violates some restrictive law or well-settled principle generally recognized as a limitation on the powers of the municipality. Wells v. Town of Mt. Olivet, 126 Ky. 131, 102 S. W. 1182, 31 Ky. Law Rep. 576, 11 L. R. A. (N. S.) 1080."

In 43 C. J. sec. 316, p. 303, it is stated that: "As a general rule if the legislature has expressly conferred upon a municipal corporation power to do a certain act, the courts cannot question, except upon constitutional grounds, the right of the municipality to exercise the power; as for instance, on the ground that it might have been regarded as unreasonable if it had been done under the implied or general power of the municipality."

Also, by the following section 317 thereof, it is further declared to be the rule that: "Ordinarily courts do not interfere with or control the exercise of the discretionary powers of municipal corporations, regardless of whether such powers are legislative, judicial, or executive."

The reason and principle of noninterference by the courts with the functioning of ministerial and administrative officers, except in rare cases, called for to relieve against capricious and wrongful conduct, is well voiced in the opinion of this court written by Judge Carroll,

in the case of Town of Lagrange v. Overstreet, 141 Ky. 43, 132 S. W. 169, 171, 31 L. R. A. (N. S.) 951, as follows:

"Boards of trustees and councils must be citizens of the town. They are selected by the people, and it must be presumed that they understand the needs and wants of the municipality, and that in the performance of their duties they will be actuated by a desire to administer its affairs in such a manner as will contribute to the growth and prosperity as well as the safety, healthfulness, and beauty of the place. Recognizing the force of these general suggestions, the courts have uniformly refused to interfere with the management of the municipal affairs of a city by its chosen officers, so long as they are within the limits of the power conferred by the statute, and it is not shown that in the enactment of ordinances they were influenced by malice, corruption, or fraud or actuated by an unreasonable, arbitrary, or capricious spirit."

Also see Dowdy et al. v. City of Mayfield et al., 213 Ky. 460, 281 S. W. 485.

We are thus brought to the question, Was the order of the commissioners in undertaking to reduce the police force and subsequent course in appointing special police, as also expressly authorized, shown by the evidence to have been arbitrary, unreasonable, or actuated by a corrupt and capricious spirit?

The order upon its face recites that the city is short of revenue with which to manage and operate its business; that the police department revenue of the city had become so reduced that it was necessary to maintain it from other sources of revenue, which the city was no longer able to provide; and that the financial condition of the city was such that it was unable then to pay its current obligations, and that therefore its judgment was that the police force should, under such circumstances, be reduced. The reasons thus appearing for their action cannot, it would seem, rightly be declared as arbitrary or capricious, but rather as announcing a policy of caution and economy such as might and should rightly appeal to the judgment and discretion of administrative officers looking to a beneficent and helpful administration of the people's business

and affairs. Their secret motive in doing this, even if suspected of being one of less public concern than professed, is not to be inquired into by us, but their following conduct and actions taken and had under this resolution are subject to our consideration, in judging their character as to whether they were cloaking wrongful conduct under the lawful declarations of an opportune resolution alleged passed as a subterfuge, or for making of it, but a shield and deceptive license for its later alleged unlawful and arbitrary action working to the hurt and injury of the plaintiffs, ousted from their positions by the artifice or plan of special police appointment of their favored friends thereto.

We do not find, however, from the evidence that the commissioners have herein so acted or that their employment, subsequent to the removal of plaintiffs as officers, of special or private policemen, found necessary to supplement the city's reduced regular police force, was by the evidence shown to have been an unreasonable or corrupt exercise of their authority or that the same was thereby shown to have been attended with larger or any increased cost therefor; nor do we think it is thereby shown that the commissioners' appointment of these special officers was by them meant to confer or bestow upon such special police or tax collector appointees the former positions of these deposed two regular policemen.

Certainly, if the board of commissioners are shown to be acting corruptly in the matter of appointing special or private policemen, there is adequate injunction or other remedy to be had against such an abuse, which should be resorted to upon such case arising. Such right or remedy, however, of taxpayer or citizen to enjoin abuse by the board of its administrative powers is, however, a different one from that here sought by appellees in the instant case, where they are asking reinstatment to positions no longer existing since June 1, and that the commissioners should, against their judgment, as expressed in the resolution complained of, re-create the two positions for regular patrolmen and restore plaintiffs to those positions.

The case of Henderson, Oil Inspector, v. Lane et al., 202 Ky. 610, 260 S. W. 361, 362, mentioned by the learned chancellor in his opinion, is earnestly contended

by appellees as authority supporting the learned chancellor in his judgment, directing that the appellees (plaintiffs below) be reinstated to their former positions, but we are of the opinion that they misconceived the rationale of the decision when giving to it such an interpretation.

That case was one not unlike in its facts and legal principle involved in its decision from the previously discussed and considered cases of Reese v. Hickman County, and City of Middlesboro ex rel. Minton v. Gibson, supra.

The facts in the Henderson Case were that a county oil inspector was corruptly and arbitrarily discharged by the county judge from her position upon the grounds of misconduct and incompetency in the discharge of her duties, notwithstanding there was no proof of such. In other words, the case was one of wrongful discharge of an incumbent from office, against which the chancellor was asked to relieve the injured party by reinstatement thereto. In granting the relief, the court said:

"Though, as a general rule, courts of equity do not try title to an office, there are instances where they will interfere to protect an incumbent in the enjoyment of his office by enjoining his unlawful removal, or ordering his reinstatement after he has been unlawfully removed. Where, as here, an officer holds for a fixed term, and is removable only for cause, it is essential to a valid removal that the charges be legally sufficient, that the incumbent have notice thereof and an opportunity to defend, and that there be some evidence tending to support the charges."

While we are in full accord with this holding and the rationale of the decision, we do not consider it applicable to, or as supporting, the different character of claim of appellees presented in the instant case.

We are therefore, after a careful review of the whole record, and looking at it from a standpoint even most favorable to appellees, of the opinion that the board of commissioners have not been shown to have acted unreasonably or arbitrarily in passing the resolution complained of, and, being of such opinion, we conclude that the judgment should be reversed, with directions to dissolve the injunction and dismiss the petition.