Reuben FORD, Individually and as Representative, etc., Appellant,

v.

COUNTY OF CARLISLE, Kentucky, et al.,
Appellees.

Court of Appeals of Kentucky.

June 1, 1962.

Rehearing Denied Dec. 7, 1962.

- ———◆———

Franklin P. Hays, John K. Skaggs, Jr., Charles H. Erwin, Skaggs, Hays & Fahey, Louisville, David R. Reed, Paducah, for appellant.

Edgar A. Zingman, Robert L. Maddox, Jr., Wyatt, Grafton & Sloss, Louisville, Robert L. Geveden, County Atty., Bardwell, Joseph Hull, General Counsel of Seiscor Co., Tulsa, Okl., for appellees.

CULLEN, Commissioner.

The fiscal court of Carlisle County contracted to purchase 10 Seiscor electric voting machines for use in elections. A citizen and taxpayer brought action to enjoin purchase and use of the machines on the grounds that they do not comply with statutory requirements and will not function reliably. After a three-day trial, during which one of the machines was subjected to thorough and exhaustive tests and demonstrations, the circuit court handed down an opinion finding that the machines do comply with statutory requirements and qualify for use in elections in this state, and entered judgment dismissing the complaint. The plaintiff has appealed.

At the time of the trial the Seiscor machines had not yet been used in any public election in this country, so the question of how they would work in an election was attempted to be answered through tests and demonstrations. The trial judge viewed the tests and demonstrations and personally participated in some of them.

The statute, KRS 125.030, provides that the fiscal court of any county may in its discretion select any type and make of voting machine that complies with the specifications and requirements of the voting machine statutes, and may employ engineers and other skilled persons to advise and aid in the selection. The statute makes the selection of the machines a matter of administrative discretion. The courts will not interfere with the exercise of administrative discretion unless there is a clear showing of an abuse of the discretion or of arbitrary or capricious action. Dorman v. Dell, 245 Ky. 34, 52 S.W.2d 892; City of Middlesboro v. Byrd, 247 Ky. 348, 57 S.W.2d 49; Standard Printing Co. v. Miller, 304 Ky. 49, 199 S.W.2d 731. Particularly in a case such as this one, where in advance of any actual use for the intended function it is claimed that a product selected under discretionary administrative authority will not properly perform the intended function, the courts should be extremely hesitant to find an abuse of discretion.

So we approach the issues in this case with the viewpoint that to warrant an injunction against the purchase and use of the Seiscor voting machines there must be clear and convincing evidence that the machines necessarily and inevitably will not perform in accordance with the statutory requirements. We also give consideration to the fact that a mechanical or electrical device will not function always with absolute perfection, which fact was recognized by the legislature, specifically as to voting machines, when it made provision in KRS 125.130 for the procedure to be followed when a voting machine "becomes in a state of disrepair so that it cannot be operated in a manner that will comply with the provisions of this chapter."

The first contention of the appellant is that the Seiscor machine does not comply with the requirement of KRS 125.-

040(1) that it insure secrecy of the voter in the act of voting, because the machine makes a distinguishable sound when a write-in vote is cast. It is contended that this sound not only gives information to persons in the voting place, in the case of a general election, that the voter has not completely supported his party ticket, but will enable a person in the polling place, by keeping a list of the voters, marking the names of those whose vote was accompanied by the sound, and then checking the list against the write-in tape after the election, to determine for whom a particular voter cast his write-in vote.

There was some dispute in the testimony as to the nature and distinguishability of the sound. The trial judge stated in his opinion that he had listened and was satisfied that the machine met the statutory requirements concerning secrecy. We think the evidence warranted a conclusion that the sound would not *always* be so audible above the normal noises of the voting place as to enable a person in the voting place to determine, by a subsequent examination of the write-in tape, which voter had cast which write-in vote. For example, if there happened to be loud talking or other noise in the polling place when the first voter of the day voted, the listening person could never be sure whether or not the write-in sound had been made. So in our opinion there is no substantial danger that write-in votes can be identified with the voters who cast them.

■■■■■ concerns the matter of disclosure of the fact that a voter has not completely supported his party ticket, there is a practical disclosure of that fact whenever a voter spends any substantial period of time in the voting booth, because a straight ticket can be voted in a few seconds. We are not prepared to say that such a disclosure is a material violation of secrecy requirements.

The Seiscor machines are so designed that when the "Vote" button is pushed a shield descends over the face of the machine. But the selectors which the voter has moved to indicate his choices do not return to a neutral position until the shield has come all of the way down. The curtains in front of the machine must be parted by hand. There was evidence that if a voter pushed the "Vote" button and then immediately parted the curtains and left the machine, a person in the polling place could observe the position of the selectors on the lower one-third of the face of the machine as the shield was coming down. It is argued that this violates the secrecy requirements

■■ The statutes do not specifically require that a voting machine have curtains. KRS 125.110 provides that if the machine does not have a curtain "that will enable concealment of the voter and his actions during the act of voting," the sheriff shall provide such a curtain, screen or hood. Accordingly it is our opinion that any deficiency in the curtain arrangement on the machines is not a basis for a finding that the machines do not meet the statutory requirements concerning secrecy.

■■ The appellant maintains that the machines violate the secrecy requirements because the back of a machine can be unlocked between votes and the counters read, so that it can be determined for whom a particular person voted. Also, that the back can be unlocked if the electric power fails when a voter is in the process of voting, and the counters can be observed as they move. The statute, KRS 125.040, contains specific provisions concerning locks. There is no showing that the Seiscor machines do not comply with these specific provisions. Since the legislature has chosen to state specific requirements as to locks it is our opinion that a machine meeting those requirements cannot be held deficient, lockwise, under the general secrecy requirement.

■■ The statute, KRS 125.040(10), requires each machine to have a "public counter" that will show at all times during

an election how many persons have voted. There was evidence that if the electric power fails when the voter is in the process of voting, and the shield is cranked down by hand, the votes will register on the Seiscor machine but the public counter will not advance. It is claimed that the machine therefore does not meet the public counter requirement. Since the counter fails to advance only in case of a power failure accompanied by a hand cranking of the shield, and since there would be no good reason to hand crank the shield merely to record the vote of the voter then in the booth, instead of waiting until the electric power was restored, we do not consider the claimed defect to be a material one.

■ The appellant maintains that the Seiscor machine does not meet the requirement of KRS 125.040(2) that "it provide" facilities that will permit votes to be cast, because it is not completely self-sufficient but requires electric current to operate. In our opinion this contention is based upon an unreasonably tight interpretation of the statute. We find no indication of any legislative intent that the machine must be solely mechanical and may not be electrically operated.

On the basis of the tests and demonstrations conducted during the trial the appellant asserts that the Seiscor machine is erratic, uncertain, intermittent and subject to error. Some of the alleged deficiencies relate to things that might happen only under most extreme circumstances. Others concern improper results that could be obtained only by a planned, careful, delicate maneuvering of the selectors. Still others are predicated upon the wholly fallacious premise that the mere moving of the selectors, before pushing the "Vote" button, constitutes the casting of a vote.

Considerable argument is addressed to alleged deficiencies in the machine regarding the dependability of lights at the top of the various columns on the face of the machine by which it is indicated in which races a voter is entitled to vote. It appears from the record that the lights worked with reasonable accuracy except when there was a defective power supply or when a weak battery was used.

It was shown that the control numbers on the write-in tape were not visible but it appears that this was due to an error in printing that could be remedied before the machines were put in actual use.

Many of the tests on the trial were conducted by representatives of rival voting machine manufacturers whose interest was of course to develop every defect that might possibly occur under any conceivable set of circumstances. We are not convinced that the tests should be accepted as a conclusive indication of how the machines would work under normal election conditions. Also, as stated at the outset of this opinion, absolute perfection cannot be expected of any mechanical device.

■ It is our conclusion that the trial court was warranted in finding that the evidence did not show convincingly a failure of the Seiscor machines to meet the statutory requirements or a lack of dependability such as to justify the issuance of an injunction against their purchase and use.

The appellant maintains that the trial court did not make adequate findings of fact. However in our opinion the court was not required to make a specific finding on each of the separate claims of defect in the machines.

The judgment is affirmed.

MONTGOMERY, Judge (dissenting).

The secrecy of the ballot is the fundamental idea of all elections. Banks v. Sergent, 104 Ky. 843, 48 S.W. 149, 20 Ky. Law Rep. 1024. The Constitution requires that all elections by the people shall be by

secret official ballot and shall be marked in private. Kentucky Constitution Section 147. In holding this safeguard mandatory, Paynter, J., in Nall v. Tinsley, 107 Ky. 441, 54 S.W. 187, 21 Ky.Law Rep. 1167, said:

> "Every freeman should be independent, and free from improper influences in the expression of his preference as to who should conduct the affairs of government, and as to the policies that should be adopted. * * He should be placed beyond reach of intimidation. * * * it was thought wise by the makers of our constitution to throw around all honest voters all the protection it was possible to give them, and the best method of doing so was believed to be the secret official ballot."

The secrecy of the ballot is destroyed by the operation of the voting machine in question whenever the voter seeks to cast a write-in vote. The majority opinion is wrong. It is recognized therein that there is a noticeable noise whenever the voter seeks to write in a vote. The majority opinion says "there is no substantial danger." If there is any danger that the secrecy of the ballot will not be preserved, then the voting machine should be condemned as unsuitable.

In Helme v. Board of Election Commissioners, 149 Mich. 390, 113 N.W. 6, the use of certain voting machines was held to be unlawful because it caused the voter to divulge that he was seeking to write in the names of candidates and thus destroyed the secrecy of the ballot. The Court said:

> "It is obvious that a voter cannot ask for and vote such a ballot without indicating that he does not vote for his full party ticket, and, to the degree that he is reluctant to have his want of party fealty known, it acts as a deterrent to his voting for the persons of his choice, and operates against his independnece as a voter."

The right to vote by secret ballot is a priceless heritage. As such the right should be preserved. No chipping away of this cornerstone of liberty should be tolerated. For this reason I respectfully dissent.