### Parsons, et al. v. Dils.

(Decided December 15, 1916.)

#### Appeal from Pike Circuit Court.

1. Adverse Possession—Extent of Adverse Possession.—Where several tracts of land, though separately described, are conveyed by the same person and embraced in the same deed, and are contiguous to each other, adverse possession for the statutory period of one of the tracts so conveyed will extend to the whole.

2. Adverse Possession—Extent of Adverse Possession.—Two tracts of land are contiguous to each other which have a common corner, although their lines do not touch elsewhere, it being possible to step from one to the other without crossing other lands.

3. Adverse Possession—Sufficiency of Evidence.—Evidence examined and held to be sufficient to support the finding of adverse possession for the statutory period by the appellees.

STRATTON & STEPHENSON for appellants.

ROSCOE VANOVER and CHILDERS & CHILDERS for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Affirming.

Prior to June, 1860, Richard Parsons was the owner of seven tracts of land patented by him, and another tract

patented by David Pauley, all lying on the waters of Red Creek in Pike county. The seven patents so issued to Parsons are as follows: A 50-acre patent surveyed April 27, 1843; a 100-acre patent surveyed February 11, 1843; a 50-acre patent surveyed February 11, 1843; a 50-acre patent surveyed February 22, 1844; a 300-acre patent surveyed December 9, 1850; a 100-acre patent surveyed September 4, 1858, and a 50-acre patent surveyed September 4, 1858; the Pauley survey was a patent for 50 acres dated February 11, 1843, which in June, 1860, Parsons held under a bond for title from William Atkins to whom Pauley had previously conveyed it.

As before stated, all of these lands were on Red Creek, and in June, 1860, there was issued to Parsons a patent for 1,025 acres with exclusions of 825 acres, all lying on Red Creek; the 1,025-acre patent embraced most of the lands already patented to Parsons as well as the Pauley survey, and some other lands previously patented; but there was within the exterior lines of the 1,025-acre patent three tracts of unappropriated land acquired by Parsons by reason of its issual.

Parsons lived on the 100-acre survey near the forks of Red Creek, and there he died in the year 1871. He left a widow, Lydia Parsons, five daughters and one son surviving him. The son, R. C. Parsons, acquired by purchase the interest of all of his sisters in the lands except that of Elizabeth Thacker, the wife of Timothy Thacker.

The widow lived for many years after the death of Richard Parsons, and continued to reside at the home near the forks of the creek, and there Elizabeth resided with her, and died there in 1899.

In December, 1907, R. C. Parsons, and the heirs at law of Elizabeth Thacker, filed this suit against the appellees, the widow and devisees of John Dils, Jr., to recover the value of timber alleged to have been cut by them from these tracts of land, and to quiet their title thereto. The defendants controverted the allegations of the petition, and pleaded title in themselves through the will of said John Dils, Jr., and also plead title by adverse possession.

The circuit court adjudged all of the lands to be the property of the Dils, and quieted their title to the same, and from that judgment the Parsons appealed to this court. Upon that appeal (159 Ky. 471), the judgment of the circuit court was reversed and decided the follow-

ing points: (1) That the commissioner's deed made to Dils for the Pauley 50 acres did not show that it had been approved by the circuit judge and, for that reason it was improperly admitted in evidence; (2) that the judgment allowed a recovery by the Dils of lands em-braced in the 1,025-acre patent which they did not claim; (3) that the deed of the jailer to Cecil for five tracts, un-der which the Dils people claimed, was void and passed ho title, and should have been admitted in evidence only for the purpose of showing the extent of the possession claimed by them; (4) that where in a deed several tracts of land, though separately described, are conveyed by the same person and are contiguous to each other, ad-verse possession of one of the tracts for the statutory period would extend to the whole; (5) that the owner or tenant holding under such a conveyance might remove from one tract to another described in such deed, and his different periods of possession of the various tracts, if continuous and aggregating fifteen years, would con-stitute adverse possession of all of the tracts so de-scribed; (6) that the court was unable to say with rea-sonable certainty from the evidence, how long the tenants remained on the particular tracts of land on which they resided, or whether certain of the tracts were embraced in the jailer's deed or in the commissioner's deed, or whether they were included in certain other patents claimed by the appellees in that locality, and authorized upon the return of the case the taking of additional proof on the question of adverse possession.

Upon the return of the case additional evidence upon the question of adverse possession was taken, and the lower court adjudged all of the eight tracts of land to belong to the appellees, but adjudged to the appellants so much of the land embraced in the 1,025-acre patent as were vacant and unappropriated when it was issued and not embraced in any of the other patents involved, and from that judgment the Parsons' heirs have again appealed.

The two lower Parsons tracts of 50 acres each—that is, the two patents nearest the mouth of Red Creek—were, under the will of John Dils, Jr., devised to his daughter, Mrs. Adams, and her children, and as neither she nor her children are parties to this action, it would seem to be entirely unnecessary to consider any title which they may claim through John Dils. At any rate there seems to

be no serious claim upon the part of the appellants that they are entitled to recover these two patents, or surely, they would have made Mrs. Adams and her children parties defendant.

So that eliminating these two lower patents, we have left the five Parsons' patents known as the "jailer tracts" and the upper Pauler tract. The jailer tracts were conveyed to Cecil by the jailer of Pike county in March, 1865, under an execution sale, and it is this deed which was held in the former opinion of this court to have been void; and therefore any title which the appellees may have to these five tracts of land must come from adverse possession, the deed being competent in evidence only for the purpose of showing the extent of the possession. The upper Pauley survey was conveyed to John Dils, Jr., by the commissioner of the Pike circuit court in October, 1886, under a sale had in an action therein pending.

As to this upper Pauley survey, upon the return of the case to the circuit court after the reversal, the defendants introduced in evidence the order made by the circuit court in that action showing the approval by the circuit judge of the deed made by the commissioner therein, and thereby cured the defect which was referred to in the former opinion.

At the same time and in the same deed conveying the upper Pauley tract to John Dils, Jr., other tracts adjoining the same were conveyed to him, and the evidence tends strongly to show that shortly thereafter Dils put a tenant on this land, or on an adjoining tract conveyed to him in the same deed, and has continuously, since that time, had a tenant on one or the other of these tracts, and therefore under the rule laid down in the opinion upon the former appeal this possession extended to the Pauley tract.

While all of the evidence in this case as to adverse holding by the various tenants referred to is confusing and more or less unsatisfactory, inasmuch as the chancellor below has twice passed upon this question of adverse possession in the same way, we are not inclined to disturb his finding.

As to the five jailer tracts, two of them are on the right-hand side of Red Creek and three of them are on the left of said creek. The two on the right adjoin each other for some distance and were embraced in the same

deed to Cecil and embraced in the Cecil deed to Dils, and what we have said with reference to the evidence of possession on the Pauley tract applies equally to these two, except there is more evidence of possession, and there is some evidence of possession and clearings thereon by Cecil even before the conveyance by him to Dils.

As to the three jailer tracts on the left of Red Creek, it appears, and the map shows, that two of them adjoin each other, and that they each corner with the third or 300-acre tract at the same point, but that from that point the lines diverge in different directions, and they do not actually adjoin, touch or connect with the 300-acre tract at any other point. There is some considerable evidence of possession by Dils, shortly after the acquisition of these jailer tracts, on the two adjoining jailer tracts on the left of the creek, but as we understand the evidence which, as we have before said, is very much confused, there was never actually any possession or inclosure by any tenant of Dils on the 300-acre tract.

These three tracts of land, however, were conveyed to Dils in the same deed, and it was held on the former appeal of this case that where several tracts of land, though separately described, are conveyed by the same person and embraced in the same deed, and are contiguous to each other, adverse possession for the statutory period of one of the tracts so embraced, will extend to the whole. So that we are confronted with the question whether the 300-acre tract upon which there was no clearing or actual inclosure, is contiguous to the other two tracts on the left-hand side of Red Creek, upon which there was an inclosure and an actual possession.

Keeping in mind that these three tracts of land had only one common corner where the other two came together with and touched the 300-acre patent, and did not touch it elsewhere, the question is whether they were "contiguous" tracts of land within the meaning of the rule of law declared in the former opinion.

The word contiguous is defined in 9 Cyc. 71, as follows:

"Adjacent, in actual close contact, touching, near; adjoining, neighboring; lying adjoining; touching sides; touching along a considerable line."

While there would seem to be from this definition some divergence of opinion as to the exact meaning of the word contiguous, we are inclined to adopt that mean-

ing which would make two tracts of land contiguous where they have a common corner, and which would make it possible to step from one to the other without crossing any other tract of land.

As above indicated, the evidence of the continuity of the adverse possession of the appellees is very conflicting, and we have with some hesitation reached the conclusion that as to the six tracts of land in controversy, it must be held sufficient, and particularly in view of the fact that the chancellor below had twice reached that conclusion. This conclusion is further fortified by the fact that as early as September, 1884, the widow of Richard Parsons, then living on these lands, entered into a written contract with Cecil, the then owner, by which her dower right as the widow of Richard Parsons was fixed and agreed upon, and by which Cecil was to have the right of way over the said dower interest for the purpose of hauling timber, etc., and this writing signed by the widow was witnessed by her son-in-law, Timothy Thacker, who was then living on the land with her. There are also several writings signed by Timothy Thacker and his sons showing that they rented certain portions of these lands, which they now claim, throughout those years from the Dils people, and there is evidence in the record that they paid the rent. In addition to all of this evidence, the record shows that about 1901 or 1902 when the Dils people were preparing to take the timber off of these lands, some of the Thackers were summoned and requested to and did point out the lines of these various patents and indicated as the lines which they claimed only the ones which were adjudged to them by the lower court. The evidence further shows that these same Thackers immediately thereafter were employed by the people who were getting out the timber for Dils, and that they actually assisted in taking the timber from the various lands which they are now claiming they own and received pay for their labor in so doing.

Upon the whole case the judgment was correct and it is affirmed.