June WHITE and Marie White, his Wife, et al., Appellants,

v.

CITY OF DANVILLE, Kentucky, a Municipal Corporation of the Third Class, Appellee.

Court of Appeals of Kentucky.

March 5, 1971.

Clay & Clay, Nelson D. Rodes, Jr., Lively & Rodes, Danville, Dean, Dean & Dean, Harrodsburg, for appellants.

Pennington, Conover, Barnett & Hensley, Danville, for appellee.

John E. Tarrant, Bert T. Combs, Charles R. Simons, Tarrant, Combs, Blackwell & Bullitt, Louisville, for amici curiae General Electric Co., The Fawcett Printing Corp., Anaconda Aluminum Co., Anaconda Wire & Cable Co. and Anaconda American Brass Co.

Joseph J. Leary, E. Gaines Davis, Jr., Smith, Reed, Yessin & Davis, Frankfort, for amici curiae Frank F. Taylor Co., Marsh Instruments Co., Union Underwear Co., Bendix-Westinghouse Automotive Air-Brake Co., Ken-Wel, Inc. (Division of Sta-Rite Industries) and Industrial Supply Co., Inc.

OSBORNE, Judge.

The defendant, City of Danville, Kentucky, a municipal corporation of the third class, had by ordinance attempted to annex certain property lying adjacent to the city. Located in the area proposed to be annexed is the Boyle County Industrial Foundation in which are located several industrial plants owned by American Greetings Corporation, Kentucky Textile Industries, Jackson Chair Company, Krasne Division of Royal Industries and Servomation Corporation, Corning Glass Works, Sellers Engineering Corporation, Blue Grass Plant Foods, Fred Cain Manufacturing Company, Boyle Block Company, Caldwell Stone Company, Danville Ready Mix Concrete Company, Danville Construction Company (black top plant), and Palm Beach Company.

Following the enactment of the ordinance, suit was filed by the appellants herein remonstrating against the proposed annexation and alleging that the ordinance did not comply with the provisions of KRS 81.280. The defendant city then filed a counterclaim for a declaration of rights. The trial court entered a judgment in which it ef-fectively disposed of all issues before the court. Appellees attempt to question in their brief the finality of this order. We believe the judgment was final and all issues were disposed of by the trial court.

The portions of KRS 81.280 on which appellants rely, provide as follows:

*"Annexation of unincorporated territory in which industrial plants are located; public policy stated; prerequisites; protest and hearing.*

(1) The General Assembly, recognizing that the general welfare and prosperity of the Commonwealth of Kentucky is very greatly dependent upon continued industrial development and expansion; and, further recognizing that reasonable assurances of fair treatment will greatly increase industrial development and expansion in Kentucky, it hereby is declared to be the public policy of the Commonwealth of Kentucky to encourage the location of new industries and the expansion of existing industries in Kentucky by prohibiting unfair and unreasonable annexation by municipal corporations of industries now or hereafter located in unincorporated areas. However, it is not the intent of the General Assembly to prohibit restrict or hamper normal expansion of municipal boundaries if such normal development and expansion extends to and embraces such industrial properties.

(2) No unincorporated territory in which is located an industrial plant or plants shall be annexed by any municipality unless such territory is embraced within a broad, comprehensive plan of annexation. The territory to be annexed shall be contiguous to the boundary line or lines of such municipality, and the territory or area to be annexed shall be both compact and contiguous. The number of registered voters duly qualified to vote in the territory proposed to be annexed shall equal or exceed fifty (50) percent of the average number of persons employed by industrial plants within such territory during the next preced-

ing calendar year, the number of such registered voters to be determined by taking the total of such voters from the last closed registration books in the county clerk's office.

(3) Nothing herein shall be construed as prohibiting any municipality from annexing any industrial plant or plants or its properties if the duly authorized representatives of such industrial plant or plants consent to or request such action.

(4) Any person or persons within the area proposed to be annexed shall have the right to file a protest and to have the protest heard and determined as now provided by existing statutes."

The parties concede by stipulation that the qualified voters in the territory proposed to be annexed do not equal 50% of the average number of persons employed by such plants.

The trial court in a lengthy memorandum opinion held that the provisions above stated conflict with other provisions of the statutes and, therefore, do not represent the public policy nor the law of this Commonwealth and further held that were the sections valid they would be unconstitutional as an effort "on the part of a legislature to arbitrarily unreasonably" violate "the constitutional rights of the municipality of Danville and other cities of the Commonwealth" under section two of the Constitution.

■ We are of the opinion the chancellor erred in his construction of the statute. KRS 81.280 when read in its entirety is simply a statute prohibiting a municipality from annexing industrial sites where the population of the site is so low as to make any service the city could render insignificant in comparison to the revenues and taxes that it would glean from the industry. The effort on the part of the City of Danville here flies directly in the face of this statute. We do not believe the statute to be contradictory nor confusing. Nor do we believe it violates any of the constitutional

rights of the City of Danville. In fact we have been hard put to find that the City of Danville has any constitutional rights. The chancellor found that the legislature in enacting KRS 81.280 in some way violated section two of the Constitution as it relates to the City of Danville. Section two of the Constitution provides:

"*Absolute and arbitrary power denied.* Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

This much-cherished section of our Constitution is often cited to this court by those who feel that they have been aggrieved by the use of governmental power. A glance through the books reveals that its protection has been sought and denied by one required to construct a sidewalk, Lambert v. Thornberry, 153 Ky. 523, 155 S.W. 1163; an officer holding an appointed office feeling he was wrongfully removed, Johnson v. Laffoon, 257 Ky. 156, 77 S.W.2d 345; a lawyer who had been disciplined by the Kentucky Court of Appeals, In Re Sparks, 267 Ky. 93, 101 S.W.2d 194; one required to pay charges to a sewer district, Louisville and Jefferson County Metropolitan Sewer v. Joseph E. Seagram & Sons, 307 Ky. 413, 211 S.W.2d 122; and a junk dealer who felt he should not be required to permit police to inspect his premises for stolen goods, Mansbach Scrap Iron Co. v. Ashland, 235 Ky. 265, 30 S.W.2d 968.

■ The foregoing are just a few cases that appear at a glance at the annotations. The list is by no means exhaustive. However, they fairly represent a mistaken concept that has long been abroad in our land and is now brought to its ultimate extreme in this case. Section two does not prohibit government using power. Without power governments could not operate. This was well understood by the framers of our Constitution. When power is used by government in any of its branches, be it executive, judicial or legislative, it must of necessity in some respects be used arbitrarily. Sec-

tion two of our Constitution does not rule out policy choices which must be made by government. Many times these choices are in reality political actions and if they are not otherwise in conflict with constitutional principles they do not violate section two as being arbitrary.

■ It is inconceivable that a municipality could in any way through the use of section two of our Constitution contend that the legislature has no right to enact proper rules for annexation of territory to a city.

We believe KRS 81.280 is constitutional. We further believe the annexation of property by a municipality is a political act within the exclusive control of the legislature and that body may enact any reasonable statutory procedures necessary in the premises. Hopperton v. City of Covington, Ky., 415 S.W.2d 381 (1967); City of Hickman, Inc. v. Choate, Ky., 379 S.W.2d 238; City of St. Matthews v. City of Beechwood Village, Ky., 373 S.W.2d 427 (1963).

■ It is elementary that a municipal corporation is an arm or instrumentality of the state and possesses only those powers expressly granted it by the legislature. City of Horse Cave v. Pierce, Ky., 437 S.W.2d 185; Griffin v. City of Paducah, Ky., 382 S.W.2d 402. When the legislature enacted KRS 81.280 and certain companion statutes creating industrial parks, KRS 154.010 etc., it in fact formed a compact with industries who were persuaded to locate in this state under legislative assurance that they would not be subjected to municipal annexation and taxation until the number of persons in the territory of their location equal 50% of the persons employed by such plants. This compact cannot be lightly taken. Basic honesty and good faith alone compel us to give the section the construction that was obviously intended by the legislature.

Judgment reversed.

All concur.