**CITY OF LEBANON, Kentucky,**
**Appellant**

v.

**Elinor B. GOODIN, Trustee of and on Behalf of Elinor B. Goodin Revocable Trust; Randall Lawson; Connie Lawson; Gerry D. Rogers; Karen P. Rogers; Darrell Shewmaker; and Rose Lee Shewmaker, Appellees.**

No. 2011–SC–000468–DG.

Supreme Court of Kentucky.

March 20, 2014.

Rehearing Denied Aug. 21, 2014.

508

David A. Pike, F. Keith Brown, Pike Legal Group, PLLC, Kandice D. Engle–Gray, for Appellant.

James L. Avritt, Sr., Avritt & Avritt, Theodore H. Lavit, Theodore H. Lavit & Associates, PSC, for Appellees.

James Donald Chaney, Laura Milam Ross, Kentucky League of Cities, for Amicus Curiae, Kentucky League Of Cities.

Opinion of the Court By Chief Justice MINTON.

The City of Lebanon sought to annex over four hundred acres of nearby property. Property owners subject to the annexation, including the Goodin Trust,[1] sued to invalidate the annexation ordinance on the grounds that (1) the City had intentionally excluded property owners who were likely to be opposed to the annexation, effectively guaranteeing its success; and (2) the City acted unconstitutionally by arbitrarily and unreasonably extending the City's boundaries and denying the property owners' statutory right of remonstrance.

The trial court agreed with Goodin and granted the motion for summary judgment. The City appealed the decision, and the Court of Appeals affirmed the trial court's ruling. We granted the City's motion for discretionary review to clarify generally the procedure for annexation under Kentucky law and examine particularly the holding of the Court of Appeals requiring that a municipality's annexation boundaries must conform to a "natural or regular" shape. Finding no support in Kentucky law for requiring "natural or regular" boundaries and finding the City did not act arbitrarily in performing this legislative function, we reverse the Court of Appeals and declare the annexation valid.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The facts in this case are undisputed and relatively simple. Paul Hilpp, a property owner within the boundaries of the proposed annexation, approached the City's mayor and inquired about the possibility of being annexed. At that time, Mr. Hilpp was in preliminary discussions with Wal–Mart about the purchase of his property. The City later adopted Ordinance 05–13, proposing to annex territory, including Mr. Hilpp's property. The territory intended for annexation by the City consisted of approximately 415 acres with its northeastern boundary adjacent to the City's preexisting boundary for 4,780.5 feet, approximately nine-tenths of a mile. Roughly, the territory is bounded on the north by U.S. Highway 68 and the existing city limits, on the east by the existing city limits and Kentucky Highway 208, and on the south and west by farmland. The section along Kentucky Highway 208 consisted of fourteen property owners, nine of whom were excluded from annexation. As a result, the territory has a number of directional changes along that boundary. Additionally, four excluded property owners in the northeast corner of the territory are surrounded on three sides by city limits as a result of the annexation. The territorial boundary along U.S. Highway 68 contains one excluded property.

Opponents to the proposed annexation, including Goodin, were unable to garner the statutorily required number of signatures.[2] So the City moved forward with the annexation. After much planning and deliberation, the City adopted an ordinance completing the annexation.

---

1. In the interest of brevity, the property owners involved in this appeal will be collectively labeled "Goodin."

2. *See* Kentucky Revised Statutes (KRS) 81A.420(2).

Goodin then filed a circuit court action challenging the constitutionality of the City's action and its compliance with KRS 81A.420, the statute allowing the City to perform a nonconsensual annexation. Goodin argued the City acted arbitrarily and unreasonably in violation of Section 2 of the Kentucky Constitution. Both parties filed motions for summary judgment. Initially, the trial court granted summary judgment in favor of the City. But, upon Goodin's motion to vacate the ruling, the trial court vacated the judgment in favor of the City and granted summary judgment in favor of Goodin. The trial court found that the City, by intentionally manipulating the annexation boundaries to guarantee a successful annexation, violated Goodin's constitutional rights.

The City appealed the trial court's ruling. The Court of Appeals affirmed the trial court and further held that the boundaries of the territory to be annexed must be "natural or regular." According to the Court of Appeals, the boundaries of the proposed annexation were deficient in this regard. In reaching this conclusion, the Court of Appeals relied heavily on prior case law dealing with "corridor" or "shoestring" annexations. Additionally, the Court of Appeals focused primarily on the "adjacent or contiguous" language in KRS 81A.410, describing the requirements of property suitable for annexation. The Court of Appeals did not reach the issue of whether Goodin's constitutional rights were violated by the City's actions.

## II. ANALYSIS.

■ The circumstances and issues presented in this case arise out of the interpretation of a statute and the constitutionality of a City's action through its properly enacted ordinances. The review of a trial court's grant of summary judgment involves only legal questions, which this Court may resolve free of any mandate to accord the trial court deference. Because these issues are matters of law, the proper standard of review for this Court is de novo.[3]

■ Our review of whether the City acted arbitrarily, in violation of Section 2 of the Kentucky Constitution, is more restrained. We discuss the standard in more detail below; but because annexation is a legislative act, we accord a certain degree of deference. The legislative act must be rationally connected to the purpose of the power for which the legislative body's power exists.

## A. The Annexed Territory was "Adjacent or Contiguous." The Court of Appeals Erred by Applying "Natural or Regular" Standard.

■ Generally speaking, the authority to annex territory lies with the General Assembly.[4] And the General Assembly may delegate this authority to municipalities.[5] In exercising this authority, munici-

**3.** *Commonwealth v. Jameson*, 215 S.W.3d 9, 15 (Ky.2006) (citing *Bob Hook Chevrolet Isuzu, Inc. v. Com. Transp. Cabinet*, 983 S.W.2d 488, 490 (Ky.1998)).

**4.** *Lenox Land Co. v. City of Oakdale*, 137 Ky. 484, 125 S.W. 1089, 1091 (1910) ("The extension or reduction of the boundaries of a city or town is held, without exception, to be purely a political matter, entirely within the power of the Legislature of the state to regulate."); *see also City of St. Matthews v. Beech-*

*wood Village*, 373 S.W.2d 427 (Ky.1963); *Carrithers, et al. v. City of Shelbyville*, 126 Ky. 769, 104 S.W. 744, 746 (1907).

**5.** *Id. See also City of Prestonsburg v. Conn*, 317 S.W.2d 484, 487 (Ky.1958); *Yount v. City of Frankfort*, 255 S.W.2d 632 (Ky.1953); *Masonic Widows and Orphans Home & Infirmary v. City of Louisville*, 309 Ky. 532, 217 S.W.2d 815, 818-19 (1948); *Town of La Grange v. Overstreet*, 141 Ky. 43, 132 S.W. 169, 170-71 (1910).

palities are required to follow strictly the statutory guidelines provided by the General Assembly.[6] As statutory creatures, municipalities only have the power explicitly granted or necessarily implied by statute.[7]

### 1. Contrary to the Holding by the Court of Appeals, "Adjacent" and "Contiguous" Should not be Read to be Equivalent.

In the context of annexation, KRS 81A.410, a relatively new statute given the long history of annexation, dictates the requirements for a territory to be suitable for annexation. Enacted in 1980, KRS 81A.410 has evaded judicial interpretation to this point. Relevant to this action, KRS 81A.410 provides:

(1) Except as provided in KRS 67C.111(3), a city legislative body may extend the city's boundaries to include any area:

(a) Which is *adjacent or contiguous* to the city's boundaries at the time the annexation proceeding is begun; and

(b) Which by reason of population density, commercial, industrial, institutional, or governmental use of land, or subdivision of land, is urban in character or suitable for development for urban purposes without unreasonable delay. (emphasis added).

In nullifying the City's annexation, the Court of Appeals focused on the "adjacent or contiguous" language found in KRS 81A.410(*l* )(a). Additionally, the Court of Appeals interpreted "adjacent" to be equivalent to "contiguous" and, in turn, anchored the entire decision on contiguity. The City, arguing Kentucky law was misapplied by the Court of Appeals, challenges the panel's interpretation of the annexation statute. On the other hand, Goodin supports the rationale used by the Court of Appeals panel and relies on the spirit of Kentucky precedent as a buttress. Viewing Kentucky law as clear on the matter, we agree with the City.

 Initially, we must respond to the interpretation of "adjacent" and "contiguous" as used by the Court of Appeals. When interpreting statutes, the foremost goal of this Court "is to give effect to the intent of the General Assembly."[8] In divining that intent, we turn to the "language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration."[9] Unfortunately, the General Assembly did not, in the entirety of KRS Chapter 81A, provide

---

**6.** *Commonwealth v. Stahr*, 162 Ky. 388, 172 S.W. 677, 678 (1915) ("It is not for the municipal authorities to alter the boundaries of the city, unless the power to do so is conferred upon them by the Legislature; and, when such power is conferred, it must be exercised under the circumstances and in the manner prescribed."). *See also* Eugene McQuillin, 2 THE LAW OF MUNICIPAL CORPORATIONS § 7:13, pp. 544–46 (3d ed. 2006) ("The annexation of territory to a municipal corporation is not a strictly municipal affair, and when the corporation proceeds under legislative requirements relating to annexation these requirements constitute the measure of power to be exercised.") (internal citations omitted).

**7.** *See, e.g., Dist. of Clifton in Campbell Cnty. v. Cummins*, 165 Ky. 526, 177 S.W. 432, 432–33 (1915) ("The measure of power conferred upon municipal corporations is subject to legislative discretion, and it is the settled rule in this jurisdiction, that in the absence of an express delegation, or a necessary inference from some express power, the municipality cannot act.").

**8.** *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky.2011).

**9.** *Id.*

a definition of "adjacent or contiguous." In the absence of such a definition, applying the commonly understood meaning is appropriate.[10] Here, the language used by the General Assembly is clear and unambiguous. We have often stated that when a statute is "clear and unambiguous on its face, we are not free to construe it otherwise[,]"[11] unless the result would be an absurdity.[12] No such absurdity will arise in giving "adjacent" and "contiguous" their plain and commonly understood meanings. Further, the apparent intent of the General Assembly will, at the very least, not be frustrated in any way.

■■■ *Adjacent* is commonly defined as "not distant or far off" or "nearby but not touching."[13] Similarly, *contiguous* is defined as "touching along boundaries often for considerable distances."[14] The Court of Appeals found *adjacent* and *contiguous* to be equivalent terms. Although we, of course, can agree with the Court of Appeals to the extent the terms are considered related words, we cannot read them as having the same meaning. The words, *adjacent* and *contiguous* have different meanings. *Contiguous*, necessarily entails touching; while *adjacent* may describe touching, it does not require it.

The Court of Appeals cited *Parsons v. Dils*,[15] an adverse-possession case dealing with properties having a common corner, for support of its decision to equate *adjacent* and *contiguous*. In *Parsons*, the court recited the definition of contiguous, which contained the term "adjacent[,]" in addition to "in actual close contact, touching, . . .; lying adjoining; touching sides; [and] touching along a considerable line."[16] To the Court of Appeals, this was sufficient evidence the terms are equivalent. We do not find this argument persuasive. After providing the dictionary[17] definition of contiguous, the *Parsons* court went on to hold, "[w]hile there would seem to be from this definition some divergence of opinion as to the exact meaning of the

---

**10.** *See id.; see also* KRS 446.080(4).

**11.** *MPM Fin. Grp., Inc. v. Morton*, 289 S.W.3d 193, 197 (Ky.2009); *see also King Drugs, Inc. v. Commonwealth*, 250 S.W.3d 643, 645 (Ky. 2008) ("[I]f a plain reading of the statute yields a reasonable legislative intent, then that reading is decisive and must be given effect."); *Commonwealth v. Plowman*, 86 S.W.3d 47, 49 (Ky.2002) ("This Court has repeatedly held that statutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required.").

**12.** *See City of Covington v. Kenton Cnty.*, 149 S.W.3d 358, 362 (Ky.2004).

**13.** Webster's New International Dictionary (3d ed.1993); *see also* Black's Law Dictionary (9th ed. 2009) ("Lying near or close to, but not necessarily touching.").

**14.** Webster's; *see also* Black's Law Dictionary (9th ed.2009) ("Touching at a point or along a boundary.").

**15.** 172 Ky. 774, 189 S.W. 1158, 1159 (1916). The Court of Appeals additionally cited to *Ridings v. City of Owensboro*, 383 S.W.2d 510 (Ky.1964), for support. In *Ridings*, the Court, operating under a now-repealed statutory structure, determined that "adjacent and compact" meant contiguity was required, despite its notable absence from the statute. We agree with the *Ridings* court to the extent that contiguity is required for annexation but remain mindful that the General Assembly has since enacted a completely different statutory structure with KRS Chapter 81A and used different language. "Compact" is no longer present in the annexation statutes. The General Assembly's alteration of the annexation requirements is not without reason, and we focus on the present statutory language. *Ridings* is still good law to the extent it governs "corridor" annexations.

**16.** *Id.*

**17.** The *Parsons* court cited to the Cyclopedia of Law and Procedure, a former competitor of Black's Law Dictionary and no longer in print.

word 'contiguous,' we are inclined to adopt the meaning which would make two tracts of land contiguous where they have a common corner, and which would make it possible to step from one to the other without crossing any other tract of land." [18] Rather than adopting *contiguous* to mean *adjacent*, the *Parsons* court considered that approach but (then adopted the definition we declare today.) *Contiguous* mandates properties touch in a manner where no other property lies between, but *adjacent* does not necessitate such positioning.[19] Indeed, the *Parsons* decision supports reading the terms as having different meanings.

This Court's emphasis on the actual meaning of statutory language, at risk of seeming pedantic, is critical because each word used by the General Assembly represents an affirmative choice to convey a specific message. The intent of the legislature is clear when the language used is unambiguous. And finally, if *adjacent* was essentially the same word as *contiguous* in the context of KRS 81A.410, *adjacent* would be rendered a mere redundancy or superfluity. When interpreting statutes, we presume the General Assembly intend-

ed for all parts of the statute to have meaning. As a result, we read KRS 81A.410 to allow a city to annex territory that is either nearby, *e.g.*, perhaps separated by roadway or river, or touching the boundary of the city.

Neither our reading of *adjacent* nor the policy underlying annexation allows for a city to pick property miles away from the current city boundary and claim it constitutes "nearby." Allowing annexed pockets of territory would be antithetical to the meaning of annexation, which, of course, involves adding a territory to an existing geographical unit while, at least in theory, maintaining communal interests, values, and goals of the city.[20] Rather, the addition of the term *adjacent* more readily fits within the annexation goal as an additional tool for a city when there is a barrier of some sort separating the annexation property from the existing city boundaries. For instance, Kentucky law has previously been interpreted to prohibit cities from annexing territory on the other side of a county road because the territory was not *contiguous*.[21] In our opinion, inhibiting annexation in this man-

---

18. *Parsons*, 189 S.W. at 1159.

19. 2 McQuillin, The Law of Municipal Corporations, § 7:31, pp. 637–39 (3d ed. 2006) ("Although some variations and differences may be observed in specific statutory definitions of the term, contiguous lands ordinarily are such as are not separated from the corporation by outside land, to an appreciable or substantial degree, which have substantial common boundary.").

20. *See Ridings*, 383 S.W.2d at 511 ("The legal as well as the popular idea of a municipal corporation in this country, both by name and use, is that of oneness, community, locality, vicinity; a collective body, not several bodies; a collective body of inhabitants—that is, a body of people collected or gathered together in one mass, not separated into distinct masses, and having a community of interest because residents of the same place, not dif-

ferent places.") (quoting 37 Am.Jur. *Municipal Corporations* § 27, p. 644).

21. Ky. OAG 76–444. While not binding on this Court, the Attorney General's opinion notes, "Since the term 'contiguous' appears to require that the lands actually touch at some point, the two divided tracts of land which are separated from the city by a county road would not be considered 'contiguous' to the city." The Attorney General went on to acknowledge it would be "necessary for the city to annex the county road lying between the two tracts in question." At the time of the Attorney General issuing this opinion, "adjacent" was not present in the statute. Indeed, "contiguous" was not an explicit requirement for nonconsensual annexations, the type presented in this case.

ner is not the intention of the General Assembly. *Adjacent* was added to the annexation statute in 1980; and, of course, we presume that was done for a purpose. We give value to that purpose today; but we do not, by this opinion, unleash cities to annex any territory simply because the territory might be desirable for urban development.[22]

### 2. The City's Annexation Fully Complied with the Statutory Requirements.

With the above understanding of KRS 81A.410 in mind, we turn to whether the City's annexation in this case satisfied the statutory requirements. The Court of Appeals erred by misapplying our "corridor" annexation jurisprudence to the instant case. Additionally, the Court of Appeals acted independently of settled Kentucky law, seemingly creating an additional annexation requirement with the introduction of the "natural or regular" boundaries standard. And the Court of Appeals erred by delving into legislative motives in its review of the annexation's legitimacy. We will deal with each error in turn and, accordingly, find the City undoubtedly fulfilled its statutory requirements with the given annexation.

The annexation before this Court in no way fits within the reasoning or facts of "corridor" annexations. "Corridor" annexations are present in the unique situation in which the property to be annexed, or incorporated as the case may be, is contiguous with the municipality *only* through a "corridor" or "finger" or "strip of highway." Simply put, "corridor" cases involve annexations where the only way to satisfy the plain statutory requirement of contiguity is via a small strip of land connected to the property that, generally speaking, is the true target of the municipality's annexation power. And, moreover, the strip of land creating the requisite contiguity typically serves no municipal purpose or is not suitable for development. When faced with annexations of this type, our case law has consistently and properly noted the likelihood of "mere subterfuge."[23] But, importantly, the invalidation of annexations on "corridor" grounds is not because of the shape of the annexed territory. Rather, the annexation is invalidated because it is unable to pass statutory muster.

Focusing on the shape of the territory to be annexed misses the real basis for disallowing "corridor" annexations.[24] The irre-

---

**22.** Further, as we explain below, underlying a court's review of annexations is a requirement of reasonableness. This requirement stems from annexation's legislative nature and the rational basis requirement for legislative activity. Accordingly, we do not view our reading of *adjacent* as a green light for municipalities to annex individual properties dispersed throughout the county and seek refuge in this opinion's mention of "nearby" in the definition of *adjacent*. Municipalities must continue to act reasonably in performing their legislative functions, including annexation. Of course, municipalities remain servient to the statutory language; and a property's suitability for urban development, alone, does not allow for it to be annexed.

**23.** *Ridings*, 383 S.W.2d at 512. *See also Griffin v. City of Robards*, 990 S.W.2d 634, 640 (Ky.1999) ("Courts have repeatedly held that when the only purpose the corridor serves is to create the requisite contiguity, such a subterfuge cannot support incorporation or annexation.").

**24.** "In fact, an analysis of those cases in which territory to be annexed has been held not to be contiguous where the territory contained a narrow strip indicates that the shape of the territory does not, of itself, result in a holding of lack of contiguity." 49 A.L.R.3d § 10, p. 614. And, generally speaking, "[a]nnexed areas are not required to have any particular shape." 2 McQuillin, The Law of Municipal Corporations, § 7:29, pp. 621–22 (3d ed.2006).

levance of shape is clear when we consider that if a "finger" of land connected to a larger territory actually had a municipal purpose or was suitable for development, as required by the current statutory system, the annexation would be valid, despite its unusual or irregular shape. Indeed, this is the precise holding of *Merritt v. City of Campbellsville.*[25] In *Merritt*, the court declared the annexation valid, despite the existence of a "corridor." Notably, shape or the regularity of the boundaries played no role in the court's calculus. Instead, the court simply applied the statutory framework and found the territory suitable for annexation. The "corridor . . . serve[d] a legitimate municipal purpose" and "in fact, serve[d] as a corridor for 'water mains.' "[26] *Merritt* stands for the proposition that shape is not the fatal flaw in "corridor" annexations. At bottom, "corridor" annexations are invalid because the territory to be annexed does not meet the statutory requirements.

 We dispel the notion that shape is a critical factor under Kentucky law in determining the validity of annexations in order to prove the "natural or regular" standard rests upon an uncertain foundation. Conspicuously absent from

*Ridings* and *Griffin*, the cases relied upon by the Court of Appeals in instituting this new standard, are the terms "natural" or "regular."[27] In fact, our research can find no Kentucky case using those terms in the context of annexation boundaries. There simply is no support for such a concept. We have held that "mere irregularity in shape," of itself, is not sufficient to invalidate an annexation.[28] To be certain, the territory's shape may sound an alarm to the citizenry or cause concern to a reviewing court about the reasonableness of an annexation.[29] After all, annexation is a legislative action and, accordingly, should be performed reasonably or at least in a manner in which it is fairly debatable.[30] But we are mindful that, in the context of municipal legislative action, "it is not the role of the Court to determine what is best for the residents of a neighborhood, a city, or the state as a whole."[31] We do not write the applicable statutory guidelines, but we are duty-bound to "apply the unambiguous language of the statutes and interpret the statutes to give them fair meaning."[32] If the General Assembly had "been so disposed as to require all municipalities to possess boundaries of uniform

**25.** 678 S.W.2d 788 (Ky.App.1984).

**26.** *Id.* at 791.

**27.** In the interest of accuracy, *Griffin* technically contains "natural" but in reference to "natural gas."

**28.** *See Hopperton v. City of Covington,* 415 S.W.2d 381, 383 (Ky.1967).

**29.** It is worth noting that, generally speaking, there are twelve commonly accepted indicia of reasonable annexation; and there is no mention of shape or boundary regularity. *See* 2 McQuillin, The Law of Municipal Corporations, § 7:39.8, pp. 705–10 (3d ed.2006).

**30.** "The court's consideration of 'reasonableness' is confined to a determination of whether there exists a sufficient showing of reason-

ableness to make that question, at the least, a fairly debatable one." 2 McQuillin, The Law of Municipal Corporations, § 7:39.6, p. 699 (3d ed.2006).

**31.** *Prestonia Area Neighborhood Ass'n v. Abramson,* 797 S.W.2d 708, 710 (Ky.1990); *see also City of Safford v. Town of Thatcher,* 17 Ariz.App. 25, 495 P.2d 150 (1972); *Taylor v. City of Chandler,* 17 Ariz.App. 346, 498 P.2d 158 (1972); *City of Burlingame v. San Mateo,* 90 Cal.App.2d 705, 203 P.2d 807 (1949) (noting that whether a municipal corporation should annex certain territory, and extent and shape which annexed territory should take, are political rather than judicial questions).

**32.** *Id.*

and regular width and length[,] it might have said so."[33]

While the wisdom of requiring "natural or regular" boundaries is debatable, we would be remiss if we did not express our deep-seated concern for the potential for a "judge-made swamp"[34] in the application of such a standard. The determination of what constitute "natural" or "regular" boundaries is a vexing enterprise. The boundaries of this Commonwealth would not qualify under such a lens of naturalness or regularity. For that matter, the *current* city boundaries of Lebanon, itself, would not qualify as natural or regular. The Court, without precedential guidance or legislative mandate, should not willingly wade into the business of land surveying.

■ It would be equally unwise for the Court to endeavor to discern the motivations of a particular legislator or legislative body in making a policy decision or enacting legislation. Goodin argues that the City intentionally excluded a number of residents on the territory's eastern border because it was aware of their planned remonstration. Over the course of this litigation, the City's alleged intentional and knowing manipulation has been principally derived from the depositions of two City officials. By the estimation of both lower courts, this manipulation resulted in the annexation boundaries being "unnatural or irregular," a standard which we cannot support. Again, it is a deeply rooted principle of law that "[a]nnexation is purely and simply a political act within the exclusive control of the legislature."[35] And "it [is] not consonant with our scheme of government for a court to inquire into the motives of legislators[.]"[36] Furthermore, despite any testimony of city officials, speculation, or innuendo to the contrary, "[a]t the time of passage of the initial ordinance the city has no way of knowing how many, if any, of the resident voters will oppose the annexation."[37] Given the fickle nature of political tides, a city's supposed knowledge of an annexation's potential success must be seen as mere speculation or conjecture.[38]

Like our predecessor Courts, we are reticent to initiate judicial review of legislative motives. "Legislative motive, understanding or inducement are not on trial,

---

**33.** *City of Dothan v. Dale Cnty. Comm'n,* 295 Ala. 131, 135, 324 So.2d 772 (Ala.1975) ("We know of no statutory mandate that the municipal boundaries of all territories sought to be annexed must form a regular shape."). As an aside, Goodin's passing argument that a city is more than simple boundaries, but is a collection of like-minded individuals with a sense of community, is valid but does not bear on the regularity of shape. This congruence of identity does not "demand[ ] regularity of shape of the boundaries of the municipality" because harmony or agreement does not depend on shape to exist. *See id.*

**34.** *Caneyville Volunteer Fire Dept. v. Green's Motorcycle Salvage, Inc.,* 286 S.W.3d 790, 813 (Ky.2009) (Minton, C.J., concurring in result only).

**35.** *Louisville Shopping Ctr., Inc. v. City of St. Matthews,* 635 S.W.2d 307, 310 (Ky.1982).

**36.** *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); *see also City of Eddyville v. City of Kuttawa,* 343 S.W.2d 404, 407 (Ky.1961) ("[T]he 'motives which impel or the expediency or wisdom of legislative or administrative action ... does not affect its legality or validity.' ").

**37.** *Rose v. City of Paris,* 601 S.W.2d 610, 611 (Ky.App.1980).

**38.** Additionally, given the fact that the Attorney General has issued a formal opinion noting the rejection of an annexation precludes a second attempt to annex a smaller portion of the same territory, it would seem like good policy for a city to attempt to be successful on the first attempt. *See* Ky. OAG 81–412.

and it is not the function of the courts to reappraise legislative reasons or to weigh evidence with respect thereto." [39] Certainly, any discussion or speculation regarding motive may be informative; but it is "also irrelevant to any discussion of whether [contiguity exists.]" [40]

Furthermore, when dealing with city ordinances, the lower courts should refrain from relying heavily on the depositions of city officials to glean the particular motives. "When the validity of an ordinance is questioned, the only proper evidence of the action of the council is the journal of their proceedings, which they cause the clerk to keep." [41] A city speaks through its ordinances; and when the city acts in accordance with the relevant statutory grant of power, which it is presumed to do, motives should not be questioned. [42] Instead, the focus should be on the result of the proper legislative action and whether or not there was a rational connection between the action taken and the supporting evidence. [43]

Turning to the annexation at hand, it is easily determined that the City properly found the territory suitable for annexation under KRS 81A.410. The northern boundary of the territory touches the City's current municipal border for some 4,780.5 feet. [44] Nearly nine-tenths of a mile of common border satisfies the contiguity requirement. [45] And the facts of this case indicate the annexation territory, in satisfaction of the second prong of KRS 81A.410(1), is "suitable for development for urban purposes without unreasonable delay" by reason of both commercial and industrial use of the land.

An annexation territory can be "urban in character" or "suitable for [urban] development" "by reason of population density, commercial, industrial, institutional, or governmental use of land, or subdivision of land." [46] Here, the record shows that the annexation territory was sought by the City as the location of a new Wal–Mart store, obviously a commercial use of the land. The annexation territory also included a city-owned industrial park, serving as a governmental and industrial use of the land. The shape of this annexation may indeed be irregular, but KRS 81A.410(1) is satisfied. The territory is

**39.** *Moore v. Ward*, 377 S.W.2d 881, 883 (Ky. 1964) (citing *Berman v. Parker, et al.*, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954)).

**40.** *Griffin*, 990 S.W.2d at 640.

**41.** *Commonwealth v. Williams*, 120 Ky. 314, 86 S.W. 553, 555 (1905).

**42.** *Town of Scott v. City of Merrill*, 16 Wis.2d 91, 113 N.W.2d 846, 847 (1962).

**43.** *Prestonia Area Neighborhood Ass'n*, 797 S.W.2d at 710.

**44.** As we note, the common border of the annexed territory and the city is approximately nine-tenths of a mile. To put that in proper context, our casual research indicates that it is approximately 4.3 miles, by car, across the widest portion of the City's current municipal area.

**45.** It is important to point out that, to our knowledge, this jurisdiction has not encountered an annexation where "islands" of land are left unannexed within the territory. In the instant case, the City, as a result of the annexation, surrounds a single property in the northeast corner of the territory on three sides. However, "[t]he fact that there would be 'islands' of unannexed territory entirely surrounded by municipal corporation does not destroy the contiguity of the territory annexed." *Kalb v. City of West Helena*, 249 Ark. 1123, 463 S.W.2d 368, 369 (1971); *see Spaulding School Dist. No. 58 v. City of Waukegan*, 18 Ill.2d 526, 165 N.E.2d 283 (1960). Additionally, we note that the property owners in the "island" are not a part of this litigation.

**46.** KRS 81A.410(1)(b).

both contiguous and suitable for urban development. Accordingly, the City's selection of the property for annexation was proper.

We pause here momentarily to address Goodin's argument that our decision in favor of the City will release a parade of horribles. As a result of this decision, we do not expect a drastic change in the manner in which cities annex territory. Cities must comply with KRS 81A.410. But we note, with regard to Goodin's main contention that the city intentionally manipulated the process and gerrymandered the territory, KRS 81A.410 appears to permit the annexation of individual tracts of property, assuming, of course, compliance with the statute. This has been referred to as "spot annexing";[47] and if the City were willing to take the time, it could have annexed this same territory property-by-property and essentially guaranteed the success of the annexation. Because the City would be dealing with only one property owner, it could focus on only pro-annexation residents. There would be an absence of remonstrators and the annexation would go forward. We mention this because it is further proof the General Assembly did not place any requirements on the shape of the boundary. The City's annexation is valid.

## B. The City's Annexation did not Violate Section 2 of the Kentucky Constitution.

■ Finally, Goodin argues the City acted arbitrarily, in violation of Section 2 of the Kentucky Constitution,[48] by intentionally manipulating the entire annexation process to guarantee its success. Essentially, Goodin argues that the City did not annex various known remonstrators in order to ensure that those subject to annexation would not be able to form a large enough coalition to satisfy KRS 81A.420. The lower courts erred by not giving proper deference to a legislative act performed in compliance with a constitutional grant of authority. We find no violation of Goodin's constitutional rights.

■ In the current action, Goodin had little option but to bring a claim under Section 2.[49] In *Kelley v. Dailey*, this Court noted that an annexation statute is not required to allow for remonstrance. And when remonstrance is unavailable, the only remaining challenge is on constitutional grounds, especially Section 2.[50] But, here, this claim is meritless.

■ As we have said repeatedly throughout this opinion, annexation is an exclusively political and legislative act. Because the "act of enlarging the territorial limits of a city is legislative[,]"[51] it is "subject to limited judicial review."[52] It is

47. While not binding on this Court, we highlight that the Attorney General, in a formal Opinion, has ruled "spot annexing" permissible. *See* Ky. OAG 12-005, 2012 WL 1561884.

48. Section 2 provides, "Absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

49. We note that the right to "contest the annexation ordinance exists independently of whether the protestors ... have filed a timely and sufficient protest to require an election on the annexation question." *Williams v.*

*City of Hillview*, 831 S.W.2d 181, 183 (Ky. 1992). This is because an improperly enacted ordinance is not simply voidable—it is void. Individuals in Goodin's position, who were unable to get enough signatures, always have KRS 418.045 at their disposal.

50. 366 S.W.2d 181, 183 (Ky.1963).

51. *City of Eddyville*, 343 S.W.2d at 407.

52. *Conrad v. Lexington–Fayette Urban Cnty. Govt.*, 659 S.W.2d 190, 195 (Ky.1983). *See also* 2 McQuillin, The Law of Municipal Corporations, § 7 ("The fixing of municipal

well-established that courts will not interfere with the exercise of discretionary powers of municipal corporations.[53] And "only in extreme cases" will courts "declare ordinances passed pursuant to legislative authority invalid on the ground that they are unreasonable, arbitrary, or oppressive."[54] The "complicated and diversified nature of municipal affairs" renders it nearly impossible to govern "entirely free from the appearance or in fact the reality of favoritism, on the one hand, and discrimination, upon the other."[55] As a result, the "extreme cases" may only arise when "it plainly appears that [officials] . . . are influenced in their official conduct by improper motives, ill will, or caprice."[56]

It is important to bear in mind that "[s]ection two of our Constitution does not rule out policy choices which must be made by government. Many times these choices are in reality political actions and if they are not otherwise in conflict with constitutional principles they do not violate section two as being arbitrary."[57] When the municipal legislative body acts in a law- or policymaking role, "the concept of what is 'arbitrary' is much more narrowly constricted."[58] And, in performing a strictly legislative act, such as annexation, a city council acts arbitrarily "if there is no rational connection between [the annexation] and the purpose for which the body's power to act exists."[59] A court will not disturb a municipality's action if the

"existence of such rational connection is fairly debatable."[60]

In the instant case, the City's decision to annex the selected territory is rationally connected to its power to act. The city council exists to promote the values of the community and to effect policies in the best interest of the community. Annexing territory potentially increases commercial development or revenue and is a method for effectuating the city council's purpose. And the City fully complied with the statute governing the selection of territory for annexation. So the City's annexation did not violate Goodin's rights under Section 2 of the Kentucky Constitution.

### III. CONCLUSION.

We reverse the Court of Appeals and remand the case to the trial court to enter summary judgment in favor of the City. The City wholly adhered to the statute in annexing a territory that was "adjacent or contiguous" and suitable for urban development. Annexation boundaries are not required by Kentucky law to be "natural or regular." And the City did not violate the Kentucky Constitution. A city's annexation of nearby territory is a legislative act, which will not be disturbed when there is a rational connection between the action taken and the purpose for which the power exists.

boundaries is generally considered to be a legislative, and not a judicial function, and the legislative action is not reviewable by the courts, unless it is arbitrary, unreasonable or violative of constitutional rights.").

53. *Id.*

54. *City of Somerset v. Newton*, 259 Ky. 195, 82 S.W.2d 306, 308 (1935).

55. *Town of La Grange*, 132 S.W. at 170.

56. *Id.* at 171.

57. *White v. Danville*, 465 S.W.2d 67, 69–70 (Ky.1971).

58. *City of Louisville v. McDonald*, 470 S.W.2d 173, 178 (Ky.1971).

59. *Id.; see also Conrad*, 659 S.W.2d at 196; *Prestonia Area Neighborhood Ass'n*, 797 S.W.2d at 709–10.

60. *Id.* (internal quotation marks omitted).

All sitting. ABRAMSON, CUNNINGHAM, KELLER, NOBLE, and VENTERS, JJ., concur.

SCOTT, J., dissents by separate opinion.

SCOTT, J., Dissenting.

I must respectfully dissent from the majority's opinion because the City's blatantly unnatural manipulation of the annexed property's boundaries—omitting dissenting property owners so as to ensure the success of the annexation—should render this annexation void. No tangible municipal value or purpose exists which would justify the unnatural and irregular boundaries of the annexed property, and the resulting exclusion of certain property owners within the City's new limits. I agree with the Court of Appeals that these boundaries were not contiguous or adjacent to the boundaries of the City per the requirements of KRS 81A.410($l$)(a). Accordingly, the annexation should be voided.

KRS 81A.410($l$)(a) provides that only property adjacent or contiguous to a city may be annexed. There has been much debate in this case over the meaning of "adjacent or contiguous." I believe the Court of Appeals properly used *Ridings v. City of Owensboro*, 383 S.W.2d 510 (1964) and *Griffin v. City of Robards*, 990 S.W.2d 634 (Ky.1999) in analyzing the meaning of "adjacent or contiguous." The boundary lines of the annexed territory should be natural and regular in relation to the boundaries of the municipality.

Admittedly, unnatural or irregular boundaries do not *per se* violate the contiguity requirement of KRS 81A.410($l$)(a). *Griffin*, 990 S.W.2d at 640. However, if an annexed property has irregular boundaries, such as creating a narrow strip or corridor, then the court must determine whether a concrete or tangible municipal value or purpose exists to justify the irregular boundaries. *Griffin*, 990 S.W.2d at

640; *Ridings*, 383 S.W.2d at 511–12. If such municipal value or purpose exists, then the boundaries are deemed contiguous. *Griffin*, 990 S.W.2d at 640; *Ridings*, 383 S.W.2d at 512. On the other hand, if no such municipal value or purpose exists, the boundaries of the annexed territory fail to meet the contiguity mandate. *Griffin*, 990 S.W.2d at 640; *Ridings*, 383 S.W.2d at 512.

In the present case, the boundary lines are highly irregular—including sixteen directional boundary changes. Furthermore, the City's manipulation of the annexed territory's boundaries has resulted in four different property owners being excluded from the annexed territory, yet completely surrounded by city limits. Thus, the shape of the annexed territory is left resembling a piece of Swiss cheese, complete with "holes" where the excluded property owners lie. Such tortured boundary lines violate the "adjacent and contiguous" requirement of the statute.

Additionally, these fully surrounded property owners, who could have defeated the annexation with their opposing votes, have instead now been cut off from direct access outside the City. There is ho access to their properties without first going through the City. As a result, the City has given itself a disturbing amount of control over these enclosed property owners, including the owners' future access to utilities and utility upgrades.

There is no legitimate justification for the highly irregular boundaries of the annexed territory, other than to deprive certain property owners of their votes. Such a political move, in any other context, would be loudly condemned. The record indicates that the City manipulated the annexed property's boundaries to ensure the success of the proposed annexation. As the circuit court noted, "[the City] arranged the boundary lines and predeter-

mined the result of the election by eliminating most of the opposition thereto." Thus, the irregular boundary lines here serve no real municipal value or purpose other than to ensure the success of the annexation itself, and should be voided under *Griffin* and *Ridings*. Otherwise, municipal condemnation is now unstoppable! Thus, I dissent and would affirm the Court of Appeals.