RENDERED:  DECEMBER 13, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1253-MR

KYLE THOMPSON                                                APPELLANT

v.        APPEAL FROM FRANKLIN CIRCUIT COURT
          HONORABLE SHEILA R. ISAAC, SPECIAL JUDGE
          ACTION NO. 21-CI-00033

ADMINISTRATIVE OFFICE OF THE
COURTS                                                        APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  ECKERLE, GOODWINE, AND McNEILL, JUDGES.

McNEILL, JUDGE:  The issue here involves CourtNet, Kentucky's electronic court filing system and database.  Appellant is attorney, Kyle Thompson (Thompson).  Appellee is the Kentucky Administrative Office of the Courts (AOC).  AOC administers CourtNet and grants access to attorneys who agree to the terms and conditions associated with CourtNet.  Thompson signed AOC's CourtNet terms and conditions of usage (User Agreement).

Thompson owns and operates Capital Court Authority, LLC (CCA). CCA provides probation monitoring services to Franklin, Shelby, and Scott District Courts. AOC suspended Thompson's CourtNet account upon discovery that he was using his account for CCA business, thus violating the terms of the User Agreement. More precisely, AOC determined that Thompson had used his CourtNet account for commercial purposes on behalf of CCA and by sharing his log-in credentials with others at CCA. AOC reactivated Thompson's KYeCourts login to eFile only status.

Thompson filed a declaration of rights suit in Franklin County Circuit Court seeking redress pursuant to contractual and constitutional claims. The court dismissed Thompson's substantive and procedural due process claims, and ordered the case proceed as a contract claim. The parties subsequently filed cross motions for summary judgment on that remaining issue. The court entered judgment in favor of AOC. For the following reasons, we affirm.

## STANDARD OF REVIEW

"Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo.*" *Fox v. Grayson*, 317 S.W.3d 1, 7 (Ky. 2010) (citation omitted). Accordingly, "the pleadings should be liberally construed in the light most

favorable to the plaintiff, all allegations being taken as true." *Id.* "Because summary judgment involves only legal questions and the existence of any disputed material issues of fact, an appellate court need not defer to the trial court's decision and will review the issue *de novo*." *Lewis v. B&R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (citation omitted). With these standards in mind, we return to the present issues.

## ANALYSIS

Thompson argues that the circuit court erred in dismissing: 1) his breach of contract claim; and 2) his substantive due process claim. We will address these in reverse order.

*Due Process*

Thompson relies primarily on the rights conferred under Section 2 of the Kentucky Constitution.

> Section 2 of the Kentucky Constitution provides the Commonwealth shall be free of arbitrary action. With respect to adjudications, whether judicial or administrative, this guarantee is generally understood as a due process provision whereby Kentucky citizens may be assured of fundamentally fair and unbiased procedures.

*Commonwealth Nat. Res. & Env't Prot. Cabinet v. Kentec Coal Co.*, 177 S.W.3d 718, 726 (Ky. 2005). *See also TECO Mech. Contractor, Inc. v. Com.*, 366 S.W.3d 386, 393 (Ky. 2012), *as corrected* (Jun. 27, 2012) ("Both the United States and

Kentucky Constitutions prohibit the Commonwealth from depriving individuals of liberty or property without due process of law."). Furthermore,

> Section 2 of our Bill of Rights is unique, only the Constitution in Wyoming having a like declaration . . . . Section 2 of our Constitution reads: 'absolute and arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority . . . .' So it may be said that whatever is contrary to democratic ideas, customs and maxims is arbitrary. Likewise, whatever is essentially unjust and unequal or exceeds the reasonable and legitimate interests of the people is arbitrary.

*Kentec Coal Co.*, 177 S.W.3d at 726.

Thompson cites cases for the general proposition that Section 2 is broader than its federal counterpart. *But Compare Blue Movies, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 317 S.W.3d 23, 29 (Ky. 2010) ("[S]tate courts are free to expand individual rights beyond the federal floor . . . .") with *Graham v. Sec'y of State Michael Adams*, 684 S.W.3d 663, 699 (Ky. 2023) (Nickell, J., concurring in part) ("Kentucky courts have long interpreted the scope of Section 2 consistently with federal equal protection and due process protections."). Critically, none of the cases Thompson cites are factually like the present. *See, e.g.*, *City of Lebanon v. Goodin*, 436 S.W.3d 505, 518 (Ky. 2014) (rejecting the plaintiff's claim that the city acted arbitrarily by intentionally manipulating the entire annexation process to guarantee its success); *Thornton v. Commonwealth*, 421 S.W.3d 372, 380 (Ky. 2013) (finding that the appellant's

-4-

twenty-year sentence invoked no sense of fundamental unfairness and does not constitute an exercise of absolute and arbitrary power as proscribed by Section 2); and *Miller v. Admin. Ofc. of the Cts*., 361 S.W.3d 867 (Ky. 2011) (addressing state due process claim in the context of whether Appellants' position with AOC as tenured or "at-will").

AOC's action here was certainly not arbitrary. The procedures and discretion of AOC for granting, maintaining, and terminating an attorney's access to CourtNet are extensive and well-defined. *See* Administrative Procedures of the Court of Justice Part XI ("AP Part XI"). Furthermore, Thompson has not presented this Court with any persuasive legal or factual authority demonstrating a constitutionally protected property interest in a CourtNet account, or that he maintains a protected status. While the protections of Section 2 are significant, they are not unlimited. Similarly, Thompson has not provided any binding or persuasive authority that his alleged interest here is protected by the Fourteenth Amendment of the United States Constitution. Therefore, we agree with the circuit court that this is a contract case. We will proceed accordingly.

***Contract***

"The interpretation of a contract is a question of law." *Stowe v. REALCO Ltd. Liab. Co*., 551 S.W.3d 462, 465 (Ky. App. 2018). In interpreting a contract, the "agreement must be construed as a whole, giving effect to all parts

and every word in it if possible." *Big Sandy Co., L.P. v. EQT Gathering, LLC*, 545

S.W.3d 842, 845 (Ky. 2018) (quoting *City of Louisa v. Newland*, 705 S.W.2d 916,

919 (Ky. 1986)). Furthermore,

> Absent an ambiguity in the contract, the parties'
> intentions must be discerned from the four corners of the
> instrument without resort to extrinsic evidence. A
> contract is ambiguous if a reasonable person would find
> it susceptible to different or inconsistent interpretations.

*Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App.

2002) (citations omitted). The contract at issue here is the User Agreement. It

provides in relevant part as follows:

> 2.3 CourtNet is authorized to track civil and criminal
> records in order to assist the User as necessary with the
> efficient performance of the User's duties required or
> authorized by law or court rule in connection with any
> civil, criminal, administrative or arbitral proceeding in
> any federal or state court or agency or before any self-
> regulatory body.
>
> 2.4 The User shall not sell CourtNet information to third
> parties or otherwise disseminate information contained in
> CourtNet to anyone except the User's client and court
> officials within the KCOJ. Dissemination of information
> obtained from CourtNet in violation of this paragraph
> shall result in the immediate termination of the User's
> CourtNet access by the AOC.
>
> 2.5 The User shall not utilize CourtNet data (1) to
> conduct a criminal background check search for
> volunteer or employment purposes; (2) to determine
> eligibility for government programs or grants; (3) for
> statistical purposes; (4) for commercial or personal use;
> or (5) for any other unspecified public or private purpose.

2.7 The AOC may immediately terminate the User's access to CourtNet if the User or the User's employee violates or appears to violate any term of this Agreement or any statute, administrative regulation, KBA or court rule, or procedure or policy adopted by the Chief Justice, the Supreme Court of Kentucky, the AOC, or any other entity of the KCOJ. The AOC may avail itself of all remedial measures available at law or equity for violation of this Agreement, including, but not limited to, criminal prosecution.

2.8 The User acknowledges that the User's identification number and password are the User's responsibility. The User shall not sell, share, disseminate or otherwise permit access by a person other than the registered user to the user ID/password information to CourtNet itself.

2.10 The User acknowledges that his or her usage of CourtNet will be monitored and/or audited by the AOC to ensure the User's compliance with this Agreement. This monitoring is not prohibited by attorney-client privilege.

In its summary judgment, the circuit court found that Thompson violated the User

Agreement as follows:

a. Allowing multiple users to use his login credentials (a violation of Section 2.8 of the User Agreement); b. Using the account for a commercial purpose (a violation of Section 2.5 of the User Agreement); and c. Using the account to conduct background checks (a violation of Section 2.5 of the User Agreement).

The circuit court also found that Thompson admitted that he violated the User

Agreement in an email he sent to the Kentucky state law librarian, Jennifer Frazier

on October 29, 2020.

Taking the relevant portions of the User Agreement in concert, CourtNet is to be used within the course and scope of the attorney-client relationship. That is not what occurred here. However, we also acknowledge that the legislature has provided for the use of private probation monitoring services when "the court deems it in the best interest of the defendant and the public[.]" KRS[1] 533.010(12). Section IX of the Kentucky Supreme Court Rules further elaborates on the necessity and use of private probation services by district courts. *See also* KRS 26A.200(1), "[a]ll records, as defined in KRS 171.410(1), which are made by or generated for or received by any agency of the Court of Justice . . . shall be the property of the Court of Justice and are subject to the control of the Supreme Court."

In consideration of the foregoing, any alternative interpretation and application of the User Agreement at issue here is a matter best reserved for the Chief Justice of the Commonwealth and our Supreme Court.

## CONCLUSION

For the foregoing reasons, we AFFIRM Franklin Circuit Court's order of dismissal and summary judgment.

ALL CONCUR.

---

[1] Kentucky Revised Statutes.

BRIEFS FOR APPELLANT:

Richard M. Guarnieri
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Melissa Norman Bork
Brent R. Baughman
Sara T. Laren
Lexington, Kentucky